# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO
_____

GABRIEL ARMENDARIZ,
ERIC DION COLEMAN, JACOB GOMEZ,
TONY LOVATO, MATTHEW J. LUCERO,
EDWARD R. MANZANARES, JOE MARTINEZ,
CHRISTOPHER MAVIS, PHILIP TALACHY,
FELIPE J. TRUJILLO, and JOSEPH VIGIL,
on their own behalf and on behalf of
a class of similarly situated persons,

        Plaintiffs,

      v.                        Case No. 1:17-cv-00339-WJ-LF

SANTA FE COUNTY BOARD OF COMMISSIONERS,
and MARK GALLEGOS, in his individual and official capacity,
and INDUSTRIAL COMMERCIAL COATINGS, LLC,

        Defendants.

## MEMORANDUM OPINION AND ORDER
## DENYING MOTION TO DISMISS PLAINTIFFS' THIRD CAUSE OF ACTION

      THIS MATTER comes before the Court upon a Motion to Dismiss Plaintiffs' Third

Cause of Action (Claims Arising Under the New Mexico Tort Claims Act), filed on March 20,

2018 by Defendants Santa Fe County Board of Commissioners and Mark Gallegos ("County

Defendants" or "Defendants" for purposes of this motion) **(Doc. 59)**. Having reviewed the

parties' briefs and applicable law, the Court finds that Defendants' motion is not well-taken and,

therefore, is denied. The Court finds that class action tolling principles do not apply to Plaintiffs'

state law claims. However, these claims survive because the Court also finds that Defendants

have waived the statute of limitations defense, are estopped from asserting the defense, and that

Plaintiffs' state law claims are equitably tolled.

# BACKGROUND

This case is a putative class action arising from Defendants' renovation of the shower facilities at the Santa Fe Adult Correctional Facility ("ACF") in 2014 when Plaintiffs and the class members were inmates at the ACF. Plaintiffs allege that they were exposed to dust, debris, and hazardous chemicals, which caused them injury.

This federal action is a continuation of a prior state court class action by Plaintiffs, Case No. D-101-CV-2016-00671 in the First Judicial District Court, County of Santa Fe, State of New Mexico. The state court action was filed on March 11, 2016 by two of the named Plaintiffs in this case, Joe Martinez and Christopher Mavis, on their own behalf and on behalf of a class of similarly situated persons. The state court action raised timely claims under the New Mexico Tort Claims Act, NMSA 1978, §§41-4-1 et seq, and according to Plaintiffs, was brought within the two year limitations period set forth in NMSA 1978, § 41-4-15. See Doc. 63 at 1-5.

The federal case was initiated on March 14, 2017 when Plaintiffs Mavis and Martinez joined with additional named Plaintiffs to file a Class Action Complaint for Damages Under 42 U.S.C. § 1983 (Doc. 1). The federal action brought claims under 42 U.S.C. § 1983 against the County Defendants on behalf of the Plaintiffs and a class of similarly situated persons based on the same underlying facts as the state court action. After Plaintiffs filed the original complaint in the federal case, parties agreed to litigate the two cases together in this case in federal court to conserve resources of both the parties and the courts. See Doc. 63 at 1-5. As part of that agreement, Plaintiffs were granted leave to amend the complaint to add Industrial Commercial Coatings, LLC ("ICC") as a Defendant and to include Plaintiffs' claims against ICC, Santa Fe County and Gallegos under the New Mexico Tort Claims Act and New Mexico common law.

Following the filing of the amended complaint, Plaintiffs dismissed the state case without prejudice.

The currently filed complaint states four causes of action:

(1) Deprivation of Civil Rights under 42 U.S.C. §1983 against County Defendants;
(2) Supervisory Liability under §1983 against County Defendants;
(3) Claims under the New Mexico Tort Claims Act, NMSA 1978, ¶41-4-7 and §41- 4-12 against County Defendants; and
(4) Claims against Defendant ICC under New Mexico Common Law.

Doc. 20. The Court recently allowed Plaintiffs to file an amended complaint to add what the Court considered to be minor changes, leaving intact the above description of the four causes of action. Doc. 128.

## DISCUSSION

This motion concerns only the claims in the Third Cause of Action brought under the New Mexico Tort Claims Act, NMSA 1978, §41-4-7 and §41-4-12 ("Tort Claims Act") against the County Defendants, with these defendants seeking dismissal of those claims because they are barred by the two-year statute of limitations. Defendants argue:

- Plaintiffs' state law claims under the Tort Claims Act) against the County Defendants are barred by the statute of limitations;

- The two-year statute of limitations was not tolled by the prior state court action filed by Plaintiffs Mavis and Martinez; and

- Even if a principle of cross-jurisdictional class action tolling applied, it would apply only to subsequent "individual" lawsuits by putative class members and not to successive class actions.

Plaintiffs contend that class action tolling principles apply to their state law claims and if not, the Court should find that Defendants have either waived the limitations defense or that they should be estopped from asserting it.

Plaintiffs' alleged injuries occurred in the spring of 2014, and so to be timely under the Tort Claims Act, the complaint should have been filed before the end of spring 2016, within the two-year limitations period of the Tort Claims Act. *See* NMSA §41-4-15(A). Instead, the complaint was filed on March 14, 2017, almost three years after the date of the alleged incidents resulting in harm and one year too late. Plaintiffs do not dispute the chronology or the fact that the Tort Claims Act limitations period has run on these claims, but they maintain that the filing of the state court case suspended the tolling of the statutory clock. Thus, the Court's inquiries here will be twofold:

- whether class action tolling principles apply; and if not,
- whether Defendants should be estopped from asserting a statute of limitations defense and allow Plaintiffs' claims to be equitably tolled.

## I.      Class Action Tolling Principles

### A.      Relevant Law

The Supreme Court first addressed the interplay of class actions and statutes of limitations more than four decades ago. In *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 544, 552-53 (1974), the Supreme Court concluded that a timely-filed complaint seeking relief on behalf of a class under Rule 23 of the Federal Rules of Civil Procedure suspends the running of the statute of limitations for potential class members, and that, upon the denial of class certification, members of the unsuccessful class may intervene in the original case without erosion of their claims to the statute of limitations. 414 U.S. 538, 544, 552-53 (1974). The Court's stated purpose was to promote "efficiency and economy of litigation" which is a "principle purpose" of Rule 23. *Id.* at 553. In a case decided nine years later, the Court concluded that so-called *American Pipe* tolling applies not only when members of the pleaded class intervene in the original suit, but also when they file their own individual cases. *Crown,*

*Cork & Seal Co. v. Parker*, 462 U.S. 345, 350, 353-54 (1983).  There remained an open question in the wake of both these cases: did these tolling principles also apply to subsequent class actions?

The Supreme Court answered this question very recently in *China Agritech, Inc. v. Resh*, holding that the equitable tolling rule does not apply to subsequently filed class action claims.[1] 138 S. Ct. 1800 (2018).  Thus, while *American Pipe* allows a putative class member to file an individual claim upon denial of class certification even if the statute of limitations would have by that time otherwise run out, *China Agritech* does not permit the maintenance of a follow-on class action past the expiration of the statute of limitations.  The Court explained that "[e]ndless tolling of a statute of limitations is not a result envisioned by *American Pipe.*" 138 S. Ct. at 1809.

B.     Tolling Argument

It is undisputed that this federal action was filed in March 2017, three years after the alleged injuries occurred and one year past the two-year limitations period under the Tort Claims Act.  The question is whether the initial state court action tolled the running of the clock under the *American Pipe* rule.

Defendants contend that Plaintiffs have no basis for any claimed tolling because the federal tolling rule in *American Pipe* does not provide that a state law class action filed in state court tolls the limitations period of a later cause of action filed outside that state's judicial system, that is, in another state or in the federal courts. Defendants point out that because Plaintiffs' Tort Claims Act claims arise under New Mexico law, this Court must apply New Mexico law and cannot allow Plaintiffs to assert claims in federal court that would be barred in a New Mexico court under the state's statute of limitations. *See Erie Railroad v. Tompkins,* 304

---

[1] Defendants filed a Notice of Supplemental Authority regarding the *China Agritech* case, to which Plaintiffs responded.  Docs. 90, 99.

U.S. 64, 78 (1938); *see also Leavens v. Foster*, 132 F.3d 43 (10th Cir. 1997) (courts cannot give a cause of action a "longer life" in federal court than it would have had in the state court" (relying on application of *Erie* to diversity cases). The Court agrees that *American Pipe* itself does not provide a tolling mechanism for Plaintiffs' state law claims unless Plaintiffs can show that New Mexico would apply that federal rule to state law claims.

Defendants claim that the state legislature has not provided for class-action tolling, and no New Mexico case has adopted *American Pipe*.[2] They refer to *Barela v. Showa Denko K.K.,* a case from the District of New Mexico, where the plaintiff sought to bring state common law claims in a diversity action in federal court, despite the running of the applicable statutes of limitations. No. Civ. 93-1469 LH/RLP, 1996 WL 316544, at *3 (D.N.M. Feb. 28, 1996). The plaintiff argued that her claims were tolled during pendency of two prior class action lawsuits— one filed in the District of Maryland and another in the District of New Mexico—in which she was a putative class member. *Id.* at *2. Under *Erie,* the court was required to apply New Mexico state law to determine if the prior class action lawsuits served to toll the statute of limitations. The court concluded that *American Pipe* did not apply to the case because New Mexico had no statute providing such tolling and had yet to address whether *American Pipe* should be used to toll the statute of limitations for putative class members. *Id.* at *3-4 ("This Court does not believe that any overriding federal interest in class actions mandates application of *American Pipe* . . . in the absence of applicable state tolling law."). Because *American Pipe*

---

[2] Defendants include a discussion as to why New Mexico's "saving" statute, NMSA 1978, §37-1-14, does not apply to claims brought under the Tort Claims Act. *See, e.g., Estate of Gutierrez ex rel. Haney v. Albuquerque Police Dep't.,* 104 N.M. 111, 114 (Ct.App. 1986). However, Plaintiffs do not rely on this provision at all because the state court action was commenced within the statute of limitations under the Tort Claims Act and so §37-1-14 does not apply. *See Bracken v. Yates Petroleum Corp.,* 107 N.M. 463 (1988) (overruling in part *Estate of Gutierrez*). Also, whether or not the saving statute applies to Plaintiffs' claims, the claims may be still be tolled under equitable estoppel—which Plaintiffs present as a ground for tolling here. Because Plaintiffs are not relying on the savings statute, there is no need to delve further into the issue.

has no direct application to parallel state procedures, Defendants contend that Plaintiffs cannot rely on this federal tolling rule to toll their state law claims, and they should be dismissed.

Plaintiffs distinguish *Barela* to minimize its impact. First, they claim that *Barela* did not address the issue at stake here. *Barela* addressed "whether the New Mexico Supreme Court would toll the New Mexico statutory period during the pendency of a class action brought outside its judicial system--in another state or in the federal courts." 1996 WL 316544 at *4. They describe the issue here as whether the *American Pipe* rule applies to state court class actions, but the Court finds this to be too simplistic a description. Plaintiffs would have the Court consider this federal action to be a continuation of the state court class action. *See* Doc. 63 at 20 ("This action is not a "subsequent" class action; it is a continuation of the timely class action that was initially filed in state court."). However, this case involves two class actions, one that was filed in state court and then voluntarily dismissed by Plaintiffs and the other one that was filed a year later in federal court (the instant action).[3] Second, Plaintiffs note that in a footnote, the court in *Barela* acknowledged that its holding was contrary to two opinions authored by the Hon. E.L. Mechem, Senior United States District Judge for the District of New Mexico in which Judge Mechem concluded that the New Mexico Supreme Court would apply *American Pipe* tolling in almost identical circumstances to the case at bar. *Barela*, 1996 WL 316544 at *2 n.4.

Plaintiffs also contend that there is one New Mexico appellate decision that addresses the *American Pipe* rule demonstrating that New Mexico would follow it and its principles under the right circumstances. In *Butler v. Deutsche Morgan Grenfell, Inc.*, a group of shareholders sued a corporation and its officers for fraud, misrepresentation, breach of fiduciary duty and violations

---

[3] Of course, the federal action could be deemed to be a continuation of the state court action under an equitable tolling theory (which the Court will address later), but under a strict tolling analysis, there are definitely two putative class actions at issue here.

of state securities law. 2006-NMCA-084, ¶ 19, 140 N.M. 111, 117. (Ct. App. 2006). The putative class action complaint was filed in 1997 in state court and in 2003, Butler joined as a defendant. His answer included cross-claims, counter claims and third-party claims, asserting several causes of action including defamation and antitrust violations. The court found all Butler's claims time-barred, and Butler contended that the *American Pipe* rule for putative class members applied to him, courtesy of the filing of the original complaint. The New Mexico Court of Appeals found that:

> (1) the *American Pipe* rule of equitable tolling for putative class members did not apply to Butler because he was a defendant in the original class action and did not belong to the category of persons intended to be protected by the *American Pipe* rule; and

> (2) the policy underlying the rule would not be served by allowing Butler to take advantage of tolling principles. The purpose of a statute of limitations is to "put defendants on notice of adverse claims and to prevent plaintiffs from sleeping on their rights," but the filing of the class action complaint would not have alerted defendants in that case to any of Butler's claims. Thus, there would be no reason to apply the tolling rule.

*Id.,* 140 N.M. at 116-117. Defendants dismiss any significance to *Butler* because the New Mexico Court of Appeals finally concluded that it did not apply to the situation presented. Plaintiffs' view is that the *Butler* court applied the *American Pipe* rule to the particular facts of the case without any analysis or debate about whether the rule or its principles should be applied in New Mexico. In the end, the court did not apply the tolling rule was because the particular circumstances did not fit within its purpose—not because of any *Erie* considerations—leaving it fair to say that the court would have applied the rule in different circumstances.

Despite the promise of *Butler,* the Court's analysis here does not fare well for Plaintiffs in the end, whether or not *American Pipe* can be used under an *Erie* analysis. If

the tolling rule does not apply, the statute of limitations has expired for the class members in this federal action. However, Plaintiffs would not get the relief they seek even if New Mexico courts would apply *American Pipe* Plaintiffs' state law claims. This is because tolling under *American Pipe/Crown* would preserve claims of putative class members in the state court case so that they could either intervene or file individual lawsuits if class certification was denied (although here, the state court case was dismissed by stipulation). Neither *American Pipe* nor *Crown* addressed the specific issue of whether tolling applies to subsequent *class actions*, and so Defendants are correct that Plaintiffs would benefit from tolling only as to their *individual* claims. Moreover, *China Agritech* forecloses any arguments offered by Plaintiffs that tolling should include class action claims. The best *American Pipe* offers Plaintiffs—if it applies at all—is a tolling of the individual claims of putative class members; it would not allow a successive class action claim based on the state law claims.

Defendants are also correct that Plaintiffs Mavis and Martinez, the two named Plaintiffs in the state court class action, would not be able to benefit from tolling under *American Pipe*, for two reasons:

First, Plaintiffs stipulated to dismissal without prejudice under NMRA 1-41(A)(1)(b). However, a dismissal without prejudice is treated as a dismissal with prejudice when the statute of limitations has run on the claims. *See Rodriguez v. Colorado*, 521 F. App'x 670, 671 (10th Cir. 2013); *King v. Lujan,* 98 N.M. 179, 181 (1982) (where period of limitations has run a dismissal without prejudice is tantamount to dismissal with prejudice). Based on Plaintiffs' assertions regarding the alleged injuries,

the statute of limitations appears to have run on the state law claims by the time the federal case was filed in 2017.[4]

Second, as the actual named parties to the previously filed class action, Mavis and Martinez do not enjoy the benefits of tolling, which is meant for "all asserted members of the class who *would have been parties. . ."*).  *American Pipe,* 414 U.S. at 554 (emphasis added); *Crown,* 462 at 354 (statute of limitations "remains tolled for all *members of the putative class")* (emphasis added). *Smith v. Bayer Corp*., 564 U.S. 299, 313 n. 10 (2011) (noting that *American Pipe* provides "that a person *not a party to a class suit"* may receive the benefit of tolling of a limitations period) (emphasis added).

The legal conclusions reached by the Court here is not unduly unfair or draconian.  The situation envisioned by *American Pipe* is that putative class members who have not yet joined the lawsuit should be able to preserve their claims until the class nature of the action is determined.  Because this tolling principle does not apply to unnamed class members who knowingly opt out of a timely filed suit, *see California Pub. Employees' Ret. Sys. v. ANZ Sec., Inc.*, there is no reason to think it should not apply to named plaintiffs like Mavis and Martinez who choose to voluntarily dismiss their claims. 137 S. Ct. 2042, 2054–55 (2017).

Thus, the Court finds that Defendants' motion is meritorious on purely legal grounds; however, it ultimately fails for the following reasons.

## II.     Equitable Estoppel/Equitable Tolling/Waiver

---

[4]  The *American Pipe* tolling rule is useful only where the statute of limitations has not expired for a putative plaintiff at the time the class action is file.  *See, e.g., Folks v. State Farm Mut. Ins. Co.,* 299 F. App'x 748, 756 (10th Cir. 2008) (applying Colorado law in diversity case) and *State Farm Mut. Auto. Ins. Co. v. Boellstorff*, 540 F.3d 1223 (10th Cir.2008).  For both plaintiffs in both *Folks* and *Boellstorff,* the same class action case that tolled both parties' claims was filed after plaintiffs filed their individual lawsuits but prior to the time the class action was filed. For Mavis and Martinez, however, the filing of this subsequent federal lawsuit cannot toll the limitations period on the state law claims because it was filed *after* the statute of limitations expired.

Plaintiffs urge the Court to deny Defendants' motion because granting the motion would be contrary to the procedure the County Defendants proposed and the agreement they brokered with Plaintiffs to transfer the state law claims to this action so that all state and federal claims could be litigated in a single forum. Plaintiffs contend that the County Defendants either implicitly waived the statute of limitations defense they now assert or worse, actively misled Plaintiffs by causing them to believe that Defendants would not raise this defense.

A.    Relevant Law

Under both federal and New Mexico law, the statute of limitations is "an affirmative defense that can be waived." *Nat'l Credit Union Admin. Bd. v. Barclays Capital Inc*., 785 F.3d 387, 395 (10th Cir. 2015); *Molinar v. City of Carlsbad*, 1987-NMSC-032, ¶ 12, 105 N.M. 628, 735 P.2d 1134 (The conduct of a party may estop it from raising the statute of limitations as a defense"). These principles apply to claims brought under the TCA. *See Blea v. Fields*, 2005-NMSC-029, ¶¶ 16–37, 138 N.M. 348, 120 P.3d 430 (applying the doctrines of equitable estoppel and fraudulent concealment to claims brought under the TCA); *Hagen v. Faherty*, 2003-NMCA-060, ¶¶ 1, 16, 133 N.M. 605, 66 P.3d 974 (holding that the state may be estopped from invoking the statute of limitations in the Tort Claims Act when right and justice demand); *Armijo v. Regents of Univ. of New Mexico*, 1984-NMCA-118, 103 N.M. 183, 704 P.2d 437, *rev'd in part*, 1985-NMSC-057, 103 N.M. 174, 704 P.2d 428 (Doctrine of fraudulent concealment was available to toll statute of limitations for actions against government under Tort Claims Act).

Equitable tolling of the statute of limitations must be determined on a case by case basis. *Gardner v. Prison Health Servs., Inc*., 985 F. Supp. 1257, 1258 (D. Kan. 1997). "Generally, equitable tolling requires a litigant to establish two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Yang v.*

*Archuleta*, 525 F.3d 925, 928 (10th Cir.2008) (quotations omitted). Conduct by a defendant may qualify as an extraordinary event. *See Roberts v. Barreras*, 484 F.3d 1236, 1241 (10th Cir.2007) (equitable tolling "typically applies in cases where a litigant was prevented from filing suit because of an extraordinary event beyond his or her control"). Equitable tolling may be appropriate where "the defendant has actively misled the plaintiff respecting the cause of action, or where the plaintiff has in some extraordinary way been prevented from asserting his rights. *Million v. Frank*, 47 F.3d 385, 389 (10th Cir. 1995).

The doctrine of equitable estoppel applies where a party has "(1) made a statement or action that amounted to a false representation or concealment of material facts, or intended to convey facts that are inconsistent with those a party subsequently attempts to assert, with (2) the intent to deceive the other party, and (3) knowledge of the real facts other than conveyed" and the other party does "(1) not know the real facts, and (2) change[s] his or her position in reliance on the estopped party's representations." *Blea*, 2005-NMSC-029, ¶ 20 (citing *Lopez v. State*, 1996-NMSC-071, ¶ 18, 122 N.M. 611). For example, equitable tolling may be appropriate where the defendant "has actively misled the plaintiff respecting the cause of action, or where the plaintiff has in some extraordinary way been prevented from asserting his rights." *Million v. Frank*, 47 F.3d 385, 389 (10th Cir. 1995).

The Court takes a detour here in an attempt to clarify the grounds for this next analysis. Plaintiffs seek to preclude (or estop) Defendants from raising a statute of limitations defense, and to have the limitations period equitably tolled for their state law claims. They avail themselves of the equitable doctrines of waiver, estoppel and equitable tolling but unfortunately they do not discuss at any length the distinction between these doctrines. It seems clear that the doctrines of equitable tolling and estoppel are related, although the differences between them are not so clear.

*See, e.g., Lauren v. United States*, No. 14-CV-03040-CBS, 2015 WL 8132995, at *10 (D. Colo. Dec. 8, 2015) (Equitable estoppel is applied if a defendant takes active steps to prevent a plaintiff from suing in time, while equitable tolling of the limitations period is appropriate if a plaintiff is unable to obtain information surrounding the claim despite due diligence); *see also Pearl v. City of Long Beach*, 296 F.3d 76, 82 (2d Cir. 2002) (defining equitable estoppel as "one instance that warrants equitable tolling"); *Martinez v. Orr*, 738 F.2d 1107, 1109 (10th Cir.1984) (acknowledging that the administrative time limit is akin to a statute of limitations and therefore subject to waiver, estoppel, and equitable tolling).

In *Heins v. Potter*, the District Court for the Southern District of New York referred to Judge Richard Posner's explanation of the difference between equitable tolling and equitable estoppel as "the defendant's wrongful conduct." 271 F. Supp. 2d 545, 552 (S.D.N.Y. 2003). The court concluded that equitable tolling only tolls a statute of limitations when a plaintiff is unaware of facts supporting a cause of action, other than facts regarding his injury, while equitable estoppel tolls a statute of limitations only when a plaintiff is aware of his cause of action. *See Wolin v. Smith Barney, Inc.,* 83 F.3d 847, 852 (7th Cir.1996) (noting that statute of limitations law is "confusing") (Posner, J.); *but see Bennett v. Coors Brewing Co.*, 189 F.3d 1221, 1235 (10th Cir. 1999) ("It is well settled that equitable tolling of the ADEA . . . is appropriate only where the circumstances of the case rise to the level of active deception . . . where a plaintiff has been lulled into inaction by her past employer.").

Fine distinctions between these equitable theories are helpful, but not required in this case. The Court intends to make factual findings here regarding Defendants' role in the decision to stipulate to dismissal of the state court case. For the Court's purposes here, it is sufficient to find that equitable estoppel would apply if there was any misleading conduct by County

Defendants, and equitable tolling would provide the relief for such conduct. There is also the question of whether Defendant's conduct amounted to waiver based on an agreement between the parties, and the Court also intends to provide a factual ground on this issue as well.

B.  Background

As mentioned previously, the present action was initiated on March 14, 2017 when Plaintiffs Mavis and Martinez joined with additional named Plaintiffs to file a class action complaint. This federal action brought claims under 42 U.S.C. §1983 against the County Defendants on behalf of Plaintiffs and similarly situated persons based on the same underlying facts as the state court action that had been filed a year earlier. E-mail correspondence between counsel describes how two cases—one filed in state court and one filed federal court—became the one case that is now before the Court (*see* Docs. 63-2 & 63-3):

- June 2017: counsel for County Defendants (same counsel representing County Defendants in the state court action) contacted counsel for Plaintiffs expressing concerns regarding "claim-splitting" issues which Defendants believed existed. Defense counsel suggested that Plaintiffs "dismiss the state case without prejudice and amend . . . the federal case to include ICC and the claims under the TCA . . . ." Defense counsel noted that the alternative would be to dismiss the federal case and amend the state case to add other plaintiffs and §1983 claims, but added that the end result would be the same: "we'd end up back in federal court given the federal claim." Doc. 63-2 at 2.[5]

- Plaintiffs' counsel did not agree that the alleged "claim-splitting" but stated that Plaintiffs were "amenable to bringing all claims into the federal suit with agreement from all parties. . . ." Doc. 63-2 at 1.

- Defense counsel then proposed a way to have all the parties concerned to voluntarily move the state law claims from state court to federal court: "I'm thinking a dismissal without prejudice of the state court case, and an amended complaint in the federal proceeding that adds in ICC and the previously-asserted claims from state court." Doc. 63-2 at 1.

---

[5] It appears that counsel for County Defendants took the lead on the negotiations leading to dismissal of the state court case. It is not clear how much of a role counsel for ICC had in this strategy, although ICC counsel was in agreement with what was being suggested. However, because this motion is directed only to the Tort Claims Act claims, the Court's reference to "defense counsel" applies only to counsel for County Defendants.

- Plaintiffs' counsel prepared an amended complaint and motion to amend and sent these proposed pleadings to County Defendants and ICC for review and approval. Doc. 63-3 at 3. Counsel for County Defendants sent back revisions to the proposed motion to amend and clarified that they were "not opposing" the motion "rather than consenting" because they did not want to "risk somehow suggesting that my clients are waiving its affirmative or other defenses by "consenting" or "agreeing" to the amended complaint. Counsel for ICC agreed with counsel for the County Defendants. *Id.* at 2. A discussion followed regarding which specific defenses would be retained:

  - Counsel for Plaintiffs stated:
    I understand the intent is to ensure that both the County and ICC retain existing defenses available to them in the State action, *but that this unopposed course of action will not be inserting otherwise unavailable defenses.* Before we submit everything, I just want to make sure I understand your positions correctly. Doc. 63-3 at 1 (emphasis added)

  - Counsel for County Defendants responded:
    My clients *may also have defenses to the new federal claim(s) and/or to the additional plaintiffs that are different from and in addition to those raised in the state court proceeding (and that were not applicable in the state court proceeding)*, and I want to be clear that our lack of opposition does not impair any of those defenses. *I'm not sure what you mean by otherwise unavailable defenses, but I want to be clear about this.* Doc. 63-3 at 1.

- Plaintiffs then filed their Unopposed Motion to Amend Complaint (Doc. 18) which the Court granted (Doc. 19). Plaintiffs explained in the motion that "it would be most efficient to litigate the two cases together in one forum to conserve the resources of the parties and the courts. Doc. 18, ¶2. Plaintiffs filed the amended complaint on August 31, 2017, which included state law claims against both Defendants as well as §1983 claims.

- A Stipulation of dismissal was filed in the state court action, which dismissed the case without prejudice under NMRA 1-041(A)(1)(b). Doc. 64-4.

- County Defendants then filed the instant motion, seeking to dismiss Plaintiffs' state law claims on statute of limitations grounds.

  - Plaintiffs' counsel asked defense counsel to honor the parties' agreement regarding raising new defenses.
  - Defendants refused, claiming that no agreement to waive the statute of limitations defense to the Tort Claims Act claims "was made and that, quite to the contrary, on more than one occasion we stated in writing that [County Defendants] were not waiving any available defenses." Doc. 63-6 at 1.

C.    Analysis

Plaintiffs contend that it would be improper to dismiss the state law causes of action against the County Defendants. They argue that Defendants' filing of this motion goes against the parties' agreement and understandings, and that they are now trying to take advantage of the procedure they initiated. Defendants do not dispute any of the background facts, but they do attempt to put their own spin on the facts, offering different rationales for their position that they did nothing outside the bounds of the parties' agreement:

*(1) Plaintiffs "elected" to dismiss the state lawsuit.*

In this argument, County Defendants admit that they suggested the maneuver to federal court in order to have Plaintiffs "rectify their impermissible claim splitting," Doc. 69 at 2, but that Plaintiffs are the ones who "elected" to dismiss the state lawsuit.

A word about claim splitting here—the Tenth Circuit has weighed in on the issue as follows:

> The rule against claim-splitting requires a plaintiff to assert all of its causes of action arising from a common set of facts in one lawsuit. By spreading claims around in multiple lawsuits in other courts or before other judges, parties waste "scarce judicial resources" and undermine "the efficient and comprehensive disposition of cases."

*Katz v. Gerardi*, 655 F.3d 1212, 1217 (10th Cir. 2011) (quoted case omitted). Defendants note that Plaintiffs' counsel frequently make use of a claim splitting strategy, that is, pursuing piecemeal litigation of the same facts in both state and federal court. *See* Doc. 69 at 2-3, n. 1, 2 & 3. A court may use its discretion to disallow such claim splitting by plaintiffs where it interferes with a court's management of its own docket. Had Defendants elected to challenge Plaintiffs' claim splitting, they had the option of seeking the Court's intervention. Defendants can be assured that, given the Court's heavy docket in a southwest border district with seven authorized district judge positions that now has two vacancies, the Court would have been highly

sensitive to any waste of resources. Instead, County Defendants took matters into their own hands.

County Defendants were obviously not happy about Plaintiffs' claim splitting, which prompted them to approach Plaintiffs and suggest moving both cases into the one federal case. However, it certainly appears that after getting Plaintiffs to agree to dismiss the state court case, which is what actually happened, Defendants then turned around and moved to dismiss the very claims that were moved into the federal case, which was not any part of the agreement.

Thus, if Plaintiffs "elected" to dismiss the state lawsuit, it was at the behest of County Defendants and in in reliance on their representations.

*(2) Plaintiffs Cannot Show "Extraordinary Circumstance" to Justify Equitable Tolling*

Defendants next contend that Plaintiffs offer no legal authority suggesting that Defendants' insistence on retaining available defenses creates the required "extraordinary circumstance" to obtain equitable tolling. The problem with this argument is that Defendants mischaracterize their desire to retain their defenses.

During the parties' negotiations, Plaintiffs exercised their due diligence by clarifying whether Defendants intended to be "inserting '*otherwise unavailable defenses.'*" As described above, Defendants countered by stating that Defendants "may also have defenses to the new *federal claim(s)* and/or to the additional plaintiffs that are different from and in addition to those raised in the state court proceeding." Doc. 63-3 at 1. Defense counsel also added "I'm not sure what you mean by otherwise unavailable defenses."

Defendants' motion to dismiss runs counter to their representations in their correspondence with Plaintiffs, and on which Plaintiffs relied. Defendants represented to

Plaintiffs that they intended to keep defenses to federal claims with no mention of defenses to state law claims and yet it is the state law claims they seek to dismiss here. Under any plain reading, the phrase, "that are different from and in addition to those raised in the state court proceeding (and that were not applicable in the state court proceeding), refers to "defenses to the new federal claim(s) and/or to the additional plaintiffs. . . ." There is no reasonable way to construe this language as referring to statute of limitations defenses to either federal claims or the plaintiffs in the state court case. In the same vein, the phrase "otherwise unavailable defenses" could only mean those defenses that would *not* be available to Defendants without the dismissal of the state court lawsuit—such as the statute of limitations defense on which Defendants now rely.

### (3) Plaintiffs' "Attempt" to Avoid Consequences of Limitations Defense

Last, Defendants argue that Plaintiffs' Amended Complaint alleged tolling of the statute of limitations, presumably in an attempt to avoid the natural consequences of the County Defendants' Tort Claims Act limitations defense. Doc. 69 at 5. Defendants point to language in the Amended Complaint stating that the applicable statutes "were tolled as of the filing of the [state court complaint] on March 11, 2016." Doc. 20, ¶335. They claim that these assertions show that Plaintiffs' expected the defense to be raised and were trying to avoid its effect. The Court disagrees with Defendants, and views this assertion in the Amended Complaint as a way to memorialize the party's agreement regarding the effect of the stipulated dismissal of the state court case, based on Plaintiffs' efforts for clarification and the parties' communications.

Defendants also contend that Plaintiffs should have expected Defendants to raise a statute of limitations defense because it had been asserted in: (1) the then-existing state court litigation

as well as (2) in the Answer to the Amended Complaint. The Court rejects both of these contentions for two reasons.

First, the Answer to the state court complaint does not assert a statute of limitations defense in connection with Tort Claims Act claims. Instead, it asserts the following:

> Plaintiffs' claims are barred and *limited* by the New Mexico Tort Claims Act and New Mexico common law and/or their failure to satisfy the prerequisites to suit.

Doc. 69-2 at 18, ¶2 (emphasis added). Given this specific language and the parties' e-mail exchanges regarding the defenses which Defendants intended to keep, Plaintiffs could not reasonably expect that if the state court case was dismissed, Defendants would be raising a statute of limitations defense to the state law claims that were to be incorporated into the federal action. Moreover, the state court action was concededly filed within the applicable limitations period and so there would be no reason for Defendants to include this defense in the state court Answer.

Second, the Answer to the federal Amended Complaint includes a statute of limitations defense in that Defendants assert that Plaintiffs claims are barred by the applicable statutes of limitations.[6] Doc. 34 at 40. However, the chronology does not fit into Defendants' argument. The Answer to the Amended Complaint was filed on October 20, 2017, more than two weeks *after* the state court case was dismissed by stipulation of the parties. *See* Doc. 63-5 (Order of Dismissal). Therefore, there was no reason for Plaintiffs to expect Defendants to raise a statute of limitations defense as a result of agreeing to dismiss the state court case. Based on the parties'

---

[6] In addition to stating an explicit statute of limitations defense, the Answer to the federal Amended Complaint also includes a defense stating that "Plaintiffs' claims are barred and limited by the New Mexico Tort Claims Act . . . ." – which is exactly the same language Defendants try to pass off as a statute of limitations defense in the state court case Answer.

e-mail exchanges, Plaintiffs' expectations would have been just the opposite, and the Court agrees with Plaintiffs' assessment of what has occurred between the parties:

> Clearly, Plaintiffs would never have agreed to this proposal if doing so would create an otherwise unavailable statute of limitations defense. By proposing this procedure and by representing to Plaintiffs that they only intended to assert "defenses to the new federal claim(s) and/or to the additional plaintiffs" in this case, . . . the County Defendants either implicitly waived the statute of limitations defense they are now asserting, or what is worse, actively misled Plaintiffs by causing them to believe that the County Defendants would not raise the statute of limitations defense that was unavailable to them in the state court action and that they now raise.

Doc. 63 at 8.

Courts have not been reluctant to find waiver of defenses based on a defendant's conduct. For example, in *Gardner v. Prison Health Servs., Inc*., 985 F. Supp. 1257, 1258 (D. Kan. 1997), the district court held that defendant had waived his right to rely on the statute of limitations as a defense. The plaintiff in that case had voluntarily dismissed his timely filed Title VII case without prejudice pursuant to a stipulation of dismissal with the defendant. However, when plaintiff refiled the case, defendant claimed that the second suit was untimely. The court reasoned that defense counsel "must have contemplated that any refiling by the plaintiff would necessarily fall outside the limitation period" and thus, defense counsel must have "intended to waive, albeit implicitly, his client's right to rely on the expiration of the applicable limitations period as a defense to plaintiff's action." 985 F.Supp. at 1259.

In *Pacheco v. Cohen,* the New Mexico Court of Appeals held that the district court below properly interpreted a stipulated order of dismissal without prejudice as maintaining the validity of the plaintiff's original complaint for statute of limitations purposes. 2009-NMCA-070, ¶10, 146 N.M. 643. The court specifically found that the plaintiff had not waived her rights to have

her claims heard by stipulating to the order, and the finding was affirmed on appeal.[7] *See also Nat'l Credit Union Admin. Bd. v. Barclays Capital Inc.,* 785 F.3d 387, 395 (10th Cir. 2015) (holding defendant to its promise not to raise the statute of limitations defense); *Colorado-Ute Elec. Ass'n, Inc. v. Envirotech Corp*., 524 F. Supp. 1152, 1156 (D. Colo. 1981) (defendant was equitably estopped from taking advantage of statute of limitations by its conduct that lulled the plaintiff into inaction).

This case is not much different from the previously discussedcases.  The Court finds that Defendants should not be able to benefit from a statute of limitations defense that Plaintiffs reasonably believed was not available to Defendants if Plaintiffs agreed to a dismissal of the state court case.

### D.    Findings and Conclusions on Equitable Tolling/Estoppel and Waiver

The Court hereby finds and concludes that:

1.    Defense counsel's communications with Plaintiffs is tantamount to waiver of the affirmative defense of the statute of limitations for Plaintiffs' state court claims.  Defense counsel appeared to be agreeing to the dismissal of Plaintiffs' state court case without pursing that defense on Plaintiffs' state court claims.  County Defendants have therefore waived the statute of limitations defense for those claims;

2.    The Court finds that the representations of counsel for County Defendants to Plaintiffs' counsel regarding retained defenses were relayed in such a way as to induce Plaintiffs to believe that the state court case could be dismissed without adverse consequences occurring as a result of the dismissal.  The Court further finds that in response to Plaintiffs' good faith inquiry

---

[7] The response to the motion to dismiss includes other cases where courts have held defendants to their representations, e.g.,: Nat'l Credit Union Admin. Bd. v. Barclays Capital Inc., 785 F.3d 387, 395 (10th Cir. 2015) (holding defendant to its promise not to raise the statute of limitations defense); Colorado-Ute Elec. Ass'n, Inc. v. Envirotech Corp., 524 F. Supp. 1152, 1156 (D. Colo. 1981) (defendant was equitably estopped from taking advantage of statute of limitations by its conduct that lulled the plaintiff into inaction);

for assurances and specifics, counsel for County Defendants avoided a direct answer and instead made a deliberately obtuse comment about "not being sure" of the meaning of "otherwise available," when the meaning should have been perfectly clear;

3.     Plaintiffs exercised due diligence in trying to determine whether their clients' claims would be prejudiced by agreeing to the dismissal.  This is not a situation where Plaintiffs should have been better prepared or where they demonstrated any ignorance of the law.  *See, e.g., Gatewood v. R.R. Ret. Bd.,* 88 F.3d 886, 890 (10th Cir.1996) (rejecting suggestion that ignorance of the law warrants equitable tolling).  Plaintiffs' inquiries to defense counsel were directed to the defenses that would be available to County Defendants and that County Defendants intended to use if Plaintiffs agreed to dismiss the state court case;

4.     The conduct of counsel for County Defendants amounted to falsely representing or concealing their intent to pursue an affirmative statute of limitations defense upon Plaintiffs' dismissal of the state court case, in order to lull Plaintiffs into agreeing to the dismissal, and that Plaintiffs agreed to dismiss the state court case believing that the defense would not be used against Plaintiffs' state court claims.  County Defendants are therefore estopped from asserting the statute of limitations defense of Plaintiffs' claims asserted under the Tort Claims Act;

5.     Because of defense counsel's conduct, Plaintiffs' state law claims under the Tort Claims Act are hereby subject to equitable tolling.  *See  Estate of Gutierrez,* 104 N.M. at 116 (equitable tolling is not precluded "when the harsh impact of technical rules might otherwise present a good faith litigant from having a day in court").

## CONCLUSION

Lawyering is an honorable profession.  It requires a good deal of mental acuity and strategic planning to zealously represent one's clients, as lawyers are obliged to do—and perhaps

as defense counsel believed they were doing. Here, unfortunately, defense counsel did not extend the respect due to opposing counsel as members of the same honorable profession.

Finally, the Court is not considering the imposition of any sanctions in this case, believing that the Court's findings herein, and its ruling in favor of Plaintiffs are sufficient censure.

**THEREFORE,**

**IT IS ORDERED** that Defendants' Motion to Dismiss Plaintiffs' Third Cause of Action (Claims Arising Under the New Mexico Tort Claims Act) **(Doc. 59)** is hereby DENIED for the reasons stated in this Memorandum Opinion and Order.

_____
CHIEF UNITED STATES DISTRICT JUDGE