IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

GABRIEL ARMENDARIZ,
ERIC DION COLEMAN, JACOB GOMEZ,
TONY LOVATO, MATTHEW J. LUCERO,
EDWARD R. MANZANARES,
CHRISTOPHER MAVIS, PHILIP TALACHY,
FELIPE J. TRUJILLO, JOSEPH VIGIL, and
JAMES M. WHEELER, on their own behalf and
on behalf of a class of similarly situated persons,

        Plaintiffs,

v.                              Case No. 1:17-cv-00339-WJ-LF

SANTA FE COUNTY BOARD OF COMMISSIONERS,
and MARK GALLEGOS, in his individual and official capacity,
and INDUSTRIAL COMMERCIAL COATINGS, LLC,

        Defendants.

**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT**

      Plaintiffs Gabriel Armendariz, Eric Dion Coleman, Jacob Gomez, Tony Lovato, Matthew

J. Lucero, Edward R. Manzanares, Christopher Mavis, Philip Talachy, Felipe J. Trujillo, Joseph

Vigil, and James M. Wheeler ("Plaintiffs"), individually and on behalf of a settlement class

defined herein ("Settlement Class"), by and through their undersigned counsel, move the Court

to grant preliminary approval of a Settlement Agreement and Release ("Settlement Agreement")

that has been negotiated and reached by Plaintiffs and Defendants Santa Fe County Board of

Commissioners and Mark Gallegos ("County") and Industrial Commercial Coatings, LLC

("ICC") (the County and ICC are hereinafter collectively referred to as "Defendants" and

Plaintiffs and Defendants are collectively referred to as "the Parties") as a proposed complete

resolution of this class action case ("Action") as between the Parties.

A copy of the Settlement Agreement is attached hereto as Exhibit 1.[1]  Specifically, Plaintiffs request that Court enter an order in the form attached to the Settlement Agreement as Exhibit D providing that the Court: (a) preliminarily approves the Settlement Agreement as being the product of serious, informed, non-collusive negotiations, having no obvious deficiencies, not improperly granting preferential treatment to Plaintiffs or segments of the Settlement Class, and falling within the range of possible approval; (b) stays all proceedings in this action until the Court renders a final decision on approval of the Class Action Settlement; (c) certifies the Settlement Class pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure; (d) appoints Gabriel Armendariz, Eric Dion Coleman, Jacob Gomez, Tony Lovato, Matthew J. Lucero, Edward R. Manzanares, Christopher Mavis, Philip Talachy, Felipe J. Trujillo, Joseph Vigil, and James M. Wheeler as Settlement Class Representatives for settlement purposes only; (e) determines that distribution of the Settlement Class Notice, including the notice itself, is reasonable and the best practicable notice under the circumstances, is reasonably calculated to apprise Settlement Class Members of their right to opt out or object to the proposed settlement, constitutes due, adequate, and sufficient notice to all persons entitled to receive notice, and meets the requirements of the Federal Rules of Civil Procedure and requirements of due process under the New Mexico and United States Constitutions; and (f) sets the date and time for the final approval hearing.

This motion will explain the circumstances and terms of the settlement, and the legal grounds supporting its preliminary approval.  Defendants do not oppose this motion and concur in the relief requested.

---

[1] All capitalized terms in this motion shall have the meaning as defined in the Settlement Agreement.

## I. FACTUAL BACKGROUND RELEVANT
## TO PRELIMINARY APPROVAL

**A.      History of this Litigation**

On March 12, 2016, certain Plaintiffs (Joe Martinez[2] and Christopher Mavis) filed a complaint against Defendants in the First Judicial District Court, County of Santa Fe, State of New Mexico, Case No. D-101-CV-2016-00671, on behalf of themselves and a putative class discussed below.  This case was dismissed without prejudice on October 4, 2017.  Certain Plaintiffs (Joe Martinez and Christopher Mavis) filed another complaint against Defendants in the First Judicial District Court, County of Santa Fe, State of New Mexico, Case No. D-101-CV-2018-01002, on behalf of themselves and a putative class discussed below.  This case remains pending, though no action has been taken to date and the case has not been served on Defendants.  Collectively, these two First Judicial District cases are referred to as the "State Actions."

On March 14, 2017, Plaintiffs filed a complaint against the County entitled *Armendariz et al. v. Santa Fe County Board of Commissioners et al*. in the United States District Court for the District of New Mexico, Case No. 1:17-cv-00339 (the "Federal Action"), on behalf of themselves and a putative class discussed below.  Plaintiffs amended the complaint for the first time on August 31, 2017.  Plaintiffs requested and were (in January 2018) ultimately granted permission to file a Second Amended Complaint.  In that Second Amended Complaint ("SAC"), filed on August 2, 2018, the putative class consisted of "all persons who were inmates incarcerated at the Santa Fe County Adult Detention Facility ('ADF') during the renovation of its

---

[2] Joe Martinez is a former named Plaintiff whose claims were dismissed with prejudice previously.

shower and lavatory areas in the Spring and Summer of 2014. Excluded from the class are employees, contractors, and/or other visitors to ADF during the relevant time period." The SAC asserted claims on behalf of the Plaintiffs and the putative class related to alleged injuries from exposure to various substances during the renovation of showers and lavatory areas at the ADF (the "Renovation Project"). The SAC sought recovery from the Commissioners of Santa Fe County, the then-Warden of the jail, and ICC, the contractor hired to do the renovations.

Since the initial complaint was filed, the Parties have engaged in extensive discovery and motions practice, including motions to dismiss portions of the complaint as well as motions to dismiss the claims of specific named Plaintiffs, motions to compel, motions for partial and complete summary judgment, and *Daubert* motions. Over two dozen depositions (expert and lay witnesses) have taken place.

On January 28, 2019, Plaintiffs filed their motion to certify a class. In March 2019, Defendants filed their oppositions to that motion as well as their summary judgment and *Daubert* motions.

**B.     Settlement Negotiations**

On April 1, 2019, after a number of months of informal settlement negotiations, the Parties engaged in a full-day mediation session with Retired United States Magistrate Judge William P. Lynch. The Parties did not reach an agreement for settlement at that session, but continued to negotiate with Judge Lynch as an intermediary. On May 3, 2019, the Parties reached an agreement to resolve the individual and class claims against all Defendants. The Parties subsequently entered into the Settlement Agreement attached hereto, formalizing their agreement. *See* Exhibit 1.

Under the Settlement Agreement, the Parties have stipulated that this action should be certified as a class action under Federal Rule of Civil Procedure 23. Subject to approval of the Court, the Settlement Agreement provides that ICC will pay a total of $300,000 to settle all claims against all Defendants, including any claim for Settlement Class Counsel's attorneys' fees and expenses and class representative compensation. In addition, Defendants will bear all administrative expenses in issuing and making payments to Settlement Class Members including the costs of the settlement administrator. The settlement will constitute a full and complete adjudication of the claims, rights and obligations of the Parties and the Settlement Class with respect to the matters alleged in the complaint as between the Parties and as further set forth in the Settlement Agreement. The Parties believe that they have crafted a fair, reasonable, and adequate settlement of the claims at issue in this case, and one that warrants the Court's preliminary approval.

## C.    The Settlement Terms

The terms of the settlement are fully described in the Settlement Agreement, *see* Exhibit 1, and are summarized as follows.

### 1.    Certification of the Class

The Settlement Class is defined in the Settlement Agreement as people who were inmates at the ADF during the Class Period (February 17, 2014 through July 15, 2014). The Parties agree that the Action should be conditionally certified as a class action under Rule 23.

### 2.    Monetary Relief

Subject to approval of the Court, the Settlement Agreement provides that ICC will pay a total of $300,000 (the "Settlement Fund") to settle all claims against all Defendants, including

any claim for Settlement Class Counsel's attorneys' fees and expenses and class representative

compensation.  Plaintiffs seek Court approval to allocate the Settlement Fund as follows:

    A.    $125,000 to Settlement Class Members who timely file valid Claim

          Forms;

    B.    $55,000 to Settlement Class Representatives ($5,000 each) in recognition

          of their services to the Settlement Class; and

    C.    $120,000 to Settlement Class Counsel, for partial reimbursement of

          expenses advanced in this litigation and for any claim for attorneys' fees.

### 3.    Settlement Administration Costs

The Settlement Agreement provides that ICC will bear all administrative expenses in

issuing and making payments to Settlement Class Members including the costs of the settlement

administrator.

### 4.    Release of Claims

The Settlement Agreement provides that upon entry of the Final Approval Order and

Judgment, the Settlement Class Representatives and members of the Settlement Class, and their

respective heirs, assigns, successors, agents, executors, and representatives (the "Releasing

Parties") shall be deemed to have, and by operation of the Settlement Agreement and the Final

Approval Order and Judgment shall have fully, finally, irrevocably, and forever released

Defendants and all of their past or present directors, officers, employees, agents, insurers,

shareholders, members, attorneys, experts and consultants; investigators; joint ventures;

contractors and subcontractors; suppliers; advisors, servants, commissioners, consultants,

representatives, partners, affiliates, related companies, divisions, related agencies, parents,

subsidiaries, predecessors, successors, and assigns (collectively, the "Defense Released Parties"),

as well as any and all other persons, firms, corporations, and governmental and/or non-

governmental entities of any kind, from any and all liabilities, claims, causes of action, damages

(whether actual, compensatory, statutory, punitive, or of any other type), penalties, costs,

attorneys' fees, losses, liens, debts, judgments, or demands, whether known or unknown, existing

or suspected or unsuspected, past, present, or future, that were or could have been asserted

against the County or ICC based on or related to the factual allegations contained in the

Complaint(s), First Amended Complaint(s), or Second Amended Complaint(s) filed in the State

Actions and Federal Action and that relate to or arise out of the renovation project (the "Released

Claims"), including unknown claims.

**5.      Notice and Opt-Out Procedures**

The Settlement Agreement provides for a detailed Settlement Class Notice to be sent by

mail to all Settlement Class Members informing them of their rights under the Settlement

Agreement, and for a summary Publication Notice to be published in three local newspapers

informing Settlement Class Members of the settlement and directing them to sources of

additional information.

The Settlement Agreement provides that Settlement Class Members have two options for

responding to the notices.  A Settlement Class Member may: (1) remain a Settlement Class

Member and be eligible to submit a Claim Form; or (2) request exclusion from the Settlement

Class and opt out.  Settlement Class Members who request exclusion from the Settlement Class

and opt out will not be deemed to have released the Defendants from any claims and may pursue

any claims they may have against the Defendants, but will not receive any payments from the

Settlement Fund.  Settlement Class Members who submit Claim Forms will be eligible to receive payments from the Settlement Fund as determined under the Plan of Allocation.  Settlement Class Members who do not opt out may also present objections to the Court at the final fairness hearing.  Settlement Class Members who do not opt out and do not submit a Claim Form will be deemed to have released their claims, but will not receive any payments from the Settlement Fund.

## II. ARGUMENT

**A.     The Settlement Agreement Merits Preliminary Approval.**

Preliminary approval of a proposed settlement is part of a two-step process required before a class action can be settled.  *See Manual for Complex Litigation (Fourth)* (hereinafter "*Manual*") § 21.632 (2004).  In considering preliminary approval, courts make a preliminary evaluation of the fairness of the settlement.  "Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted."  *In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997); *see also Manual* § 21.632. "Once preliminary approval is bestowed, the second step of the process ensues: notice is given to the class members [of the terms of the proposed settlement and of a hearing], at which class members and the settling parties may be heard with respect to final court approval."  *NASDAQ*, 176 F.R.D. at 102; *see also Manual* §§ 21.633-34.

In considering whether to grant a motion for preliminary approval of a proposed settlement agreement, the Court utilizes a "threshold inquiry" intended merely to reveal

conspicuous defects.  *See In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 330, 337-38 (N.D. Ohio 2001).  Ultimately, of course, before a settlement can be finally approved, the Court must determine that a settlement is fair, reasonable and adequate.  *See Jones v. Nuclear Pharm., Inc.*, 741 F.2d 322, 324 (10th Cir. 1984).  At the preliminary approval stage, however, the Court should evaluate, based on the terms of the Settlement Agreement, the contents of the record, and the controlling legal authority whether "the proposed settlement is sufficiently reasonable, adequate, fair, and consistent with the requirements of Fed. R. Civ. P. 23 to warrant notice . . . to the class members and a fairness hearing."  *Marcus v. Kan. Dep't of Revenue*, 206 F.R.D. 509, 513 (D. Kan. 2002).

Considering the issues, evidence, and nature of the settlement negotiations, preliminary approval is appropriate in this case.  First, the proposed settlement is the product of serious, informed, non-collusive negotiations.  The settlement negotiations were lengthy and were adversarial in nature.  The Parties engaged in mediation with the assistance of a highly experienced mediator, retired United States Magistrate Judge William P. Lynch.  Thus, the course of settlement negotiations rises well above the threshold for preliminary approval.

Second, the terms of the Settlement Agreement are fair, reasonable, and adequate to resolve the dispute.  Liability was hotly contested.  Both sides developed evidence to support their claims and defenses.  Plaintiffs believe their class would have been certified.  Defendants are equally convinced they would have defeated class certification and would have been allowed to defend the claims on an individual basis.  All Parties predicted protracted litigation.  Most courts, in considering approval of a class action settlement, note the advantages of avoiding lengthy and expensive litigation.  *See, e.g.*, *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268,

1276 (9th Cir. 1992) (recognizing "the strong judicial policy that favors settlements, particularly where complex class action litigation is concerned"); *Wald v. Wolfson (In re United States Oil and Gas Litig.)*, 967 F.2d 489, 493 (11th Cir. 1992) ("Complex litigation . . . can occupy a court's docket for years on end, depleting the resources of the parties and the taxpayers while rendering meaningful relief increasingly elusive").  The Parties here recognized the advantages of settlement over continued litigation.

The Settlement Fund established here is a meaningful benefit to Settlement Class Members.  The Settlement Class Members' chances of obtaining better results by continuing the litigation or by pursuing separate claims are uncertain at best.  *See Duhaime v. John Hancock Mut. Life Ins. Co.*, 177 F.R.D. 54, 69 (D. Mass. 1997) (approving settlement agreement and noting that settlement "provides class members with timely relief without having to risk the uncertainty of outcome, duration, and expense inherent in continuing the litigation").

Finally, the Settlement Agreement does not grant unduly preferential treatment of class representatives or segments of the class.  *See NASDAQ*, 176 F.R.D. at 102.  In this instance, through non-collusive negotiation, the Parties have agreed that the Settlement Agreement may include incentive awards to the Settlement Class Representatives, subject to Court approval. Incentive awards of $5,000 to each Settlement Class Representative are warranted in this case to recognize the significant time and efforts expended by the Settlement Class Representatives on behalf of the Class and the risks that they undertook in bringing the lawsuit.  *Ingram v. The Coca Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001) ("'Courts routinely approve incentive awards to compensate named plaintiffs for the services they provide and the risks they incurred during the course of the class action litigation.'" (quoting *In re S. Ohio Correctional Facility*, 175 F.R.D.

270, 272 (S.D. Ohio 1997))). The Settlement Class Representatives contributed substantial time and energy in support of the action, including extensive participation in discovery, case strategy, case management, and mediation. *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995) (in considering an incentive award, the court may consider the risk to the class representatives, both financial and otherwise; the personal difficulties encountered by the class representatives; the amount of time and effort spent on litigation; the duration of the litigation; and the personal benefit—or lack thereof—enjoyed by the class representative as a result of the litigation). Given their contributions throughout the litigation, the proposed individual payments of $5,000 are reasonable and not excessive. *Cf. Ingram*, 200 F.R.D. at 694 (approving $300,000 incentive award to each named plaintiff).

**B.     The Court Should Appoint Settlement Class Representatives and Settlement Class Counsel, and Conditionally Certify the Settlement Class.**

The instant case, which alleges that Defendants' practices affected a large group of individual detainees at the ADF, is precisely the sort of dispute that Rule 23 is designed to remedy. For that reason, Plaintiffs urge the Court to appoint Settlement Class Representatives and Settlement Class Counsel, and to conditionally certify the Settlement Class under Rule 23. Because Plaintiffs meet all the technical requirements of Rule 23, and because it is fair and efficient to resolve all the claims together, the Court should conditionally certify the Settlement Class in this case.

**1.     The Court Should Appoint the Settlement Class Representatives and Settlement Class Counsel.**

This motion seeks appointment of Plaintiffs Gabriel Armendariz, Eric Dion Coleman, Jacob Gomez, Tony Lovato, Matthew J. Lucero, Edward R. Manzanares, Christopher Mavis,

Philip Talachy, Felipe J. Trujillo, Joseph Vigil, and James M. Wheeler as Class Representatives. Each of these Plaintiffs is an appropriate Settlement Class Representative as they were subject to the same policies and practices that harmed the members of the Class. *See* Doc. 136 at 39-51. Each of these Plaintiffs has acted in the best interest of the Settlement Class and none of these Plaintiffs has a conflict of interest which would preclude him from serving as a representative of the Settlement Class. *See* Doc. 231-6, Ex. PP, at 4, ¶ 8; Doc. 231-6, Ex. QQ, at 3-4, ¶ 9; Doc. 231-6, Ex. RR, at 3, ¶ 8; Doc. 231-6, Ex. SS, at 4, ¶ 10. As set forth below, the Plaintiffs satisfy the standards of typicality and adequacy. Accordingly, it is appropriate that they be appointed as Settlement Class Representatives.

This motion also seeks appointment of Plaintiffs' Counsel as Settlement Class Counsel. Rule 23(g)(1)(A) provides that the Court must consider the following factors when appointing class counsel:

> (i) the work counsel has done in identifying or investigating potential claims in the action;
> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
> (iii) counsel's knowledge of the applicable law; and
> (iv) the resources that counsel will commit to representing the class.

As set forth in the affidavits of Plaintiffs' counsel, each of these factors support appointment of Plaintiffs' counsel as Settlement Class Counsel. They are experienced in jail conditions litigation, class action litigation, complex litigation, and civil rights litigation, and none has any conflict of interest which would preclude serving as Class Counsel. *See* Doc. 231-6, Ex. PP, at 1-4; Doc. 231-6, Ex. QQ, at 1-4; Doc. 231-6, Ex. RR, at 1-3; Doc. 231-6, Ex. SS, at 1-3. They have worked since 2014 in identifying and investigating claims in this action. See Doc. 231-6, Ex. NN. They have the resources to pursue this litigation on behalf of the Class. *See* Doc. 231-

6, Ex. PP, at 4; Doc. 231-6, Ex. QQ, at 3; Doc. 231-6, Ex. RR, at 2, ¶ 8; Doc. 231-6, Ex. SS, at 3.

Counsel are committed to providing the expertise and resources necessary to vigorously

prosecute this action.  *See id*.  For all these reasons, Plaintiffs' counsel should be appointed as

Settlement Class Counsel.

> **2.    A Class Should Be Conditionally Certified for Settlement Purposes Under Rule 23(a).**

A class must have the following prerequisites in order to be certified under Rule 23(a):

> (1) the class is so numerous that joinder of all members is impracticable, (2)
> there are questions of law or fact common to the class, (3) the claims or
> defenses of the representative parties are typical of the claims or defenses
> of the class, and (4) the representative parties will fairly and adequately
> protect the interests of the class.

*Lopez v. City of Santa Fe*, 206 F.R.D. 285, 288 (D.N.M. 2002) (certifying settlement class); Fed.

R. Civ. P. 23(a). Here the proposed Settlement Class clearly satisfies all the Rule 23(a)

requirements.

> **i.    The Settlement Class is so numerous that joinder is impracticable.**

Rule 23(a)(1) requires that a "class is so numerous that joinder of all members is

impracticable." Fed. R. Civ. P. 23(a)(1).  "There is 'no set formula to determine if [a] class is so

numerous that it should be so certified.'"  *Lavigne v. First Cmty. Bancshares, Inc.*, No. 1:15-cv-

00934-WJ/LF, 2018 WL 2694457, at *3 (D.N.M. Jun. 5, 2018) (quoting *Rex v. Owens ex rel.

State of Okla.*, 585 F.2d 432, 436 (10th Cir. 1978)).  While Plaintiffs bear the burden of

establishing numerosity, it is not necessary to establish a precise number of class members or to

have identified the specific members of the class.  *Id*.

The Settlement Class in this case is estimated to include approximately 3,000 individuals.

Joinder of so many individual members would be impracticable, and accordingly this Court

should find that the numerosity requirement of Rule 23(a) is satisfied in this case.  *See* 1 H. Newberg & A. Conte, *Newberg on Class Actions* §3:5, at 246 (4th. ed. 2002) (in most cases where class size numbers in the hundreds, numerosity is not an issue); *see also Lowery v. City of Albuquerque*, 273 F.R.D. 668, 682-83 (D.N.M. 2011) (numerosity satisfied where class consists of several hundred class members); *Pueblo of Zuni v. U.S.*, 243 F.R.D. 436, 444 (D.N.M. 2007) (numerosity satisfied where class consisted of "well over 200" members).

<blockquote>ii.    There are questions of law and fact common to the Settlement Class.</blockquote>

Rule 23(a)(2) requires that "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  The commonality factor assesses whether the claims raised by the named plaintiffs are common to the class as a whole and capable of class wide resolution.  *See Lavigne*, 2018 WL 2694457, at *4.  The commonality requirement is met if Plaintiffs' grievances share a common question of law or fact.  *Lopez*, 206 F.R.D. at 288.  "Commonality requires only a single issue common to the class, and the fact that the claims of individual class members may differ factually should not preclude certification under Rule 23(b)(2) of a claim seeking the application of a common policy."  *Id.* at 289 (internal quotations marks & citations omitted); *see also Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir. 1988).

The claims on behalf of the Settlement Class before the Court share numerous common questions of fact and law that are capable of class-wide resolution, including:

- the toxicity of the dust and debris generated during the surface preparation;

- the toxicity of the polyurea spray used to coat the showers;

- the adequacy of the containment and ventilation measures used during the renovation;

- whether ICC and the County Defendants followed appropriate practices in the course of

the renovation;

- whether ICC and the County Defendants were negligent;

- whether the actions of ICC and the County Defendants constitute assault and battery;

- whether the County Defendants violated the Eighth Amendment;

- whether the County Defendants violated the Fourteenth Amendment; and

- whether the County Defendants failure to preserve videotapes of the shower renovation constitutes spoliation of evidence.

These common questions of law and fact are more than sufficient to meet the requirements of Rule 23(a)(2). *See Lowery*, 273 F.R.D. at 683-84 (commonality is satisfied "where the entire proposed class is subjected to the same allegedly unconstitutional practices"); *Harrington v. City of Albuquerque*, 222 F.R.D. 505, 510 (D.N.M. 2004) ("[T]he Plaintiffs allege that the entire class was subjected to the same unconstitutional practices, which is sufficient to meet the commonality requirement."). Resolving these questions would depend in large part upon evidence that would apply to the Settlement Class as a whole. Thus, the Rule 23(a)(2) commonality requirement is satisfied.

### iii.    Plaintiffs' claims are typical of the Settlement Class and there are no conflicts.

Rule 23(a)(3) requires that the claims of the Plaintiffs be typical of the claims of the class they seek to represent. Fed. R. Civ. P. 23(a)(3). However, "[t]he interests and claims of Named Plaintiffs and class members need not be identical to satisfy typicality." *DG ex rel. Stricklin*, 594 F.3d at 1198, *quoted in Lavigne*, 2018 WL 2694457, at *5. "Provided the claims of Named Plaintiffs and class members are based on the same legal or remedial theory, differing fact situations of the class members do not defeat typicality." *Id*. at 1198-99; *see also Adamson v.*

*Bowen*, 855 F.2d 668, 676 (10th Cir. 1988) ("[D]iffering fact situations of class members do not defeat typicality under Rule 23(a)(3) so long as the claims of the class representative and class members are based on the same legal or remedial theory.").

Here, the proposed Settlement Class Representatives present claims that are typical of those of the Settlement Class. "A . . . plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and if his or her claims are based on the same legal theory." *Lopez*, 206 F.R.D. at 289 (internal quotation marks & citations omitted); *see also In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996) (*citing Newberg on Class Actions* §3.13, at 3-76 (3d. ed. 1992)).

Plaintiffs seek damages in connection with Defendants' policies and practices that harmed them and the Settlement Class Members in precisely the same manner. Their claims are based on the same legal and remedial theory as the claims brought on behalf of the Settlement Class, and the typicality requirement is met. *See DG ex rel. Stricklin*, 594 F.3d at 1198-99 (affirming district court finding of typicality regardless of any class members' individual circumstances, where the harm and threat suffered by the named plaintiffs as a result of the defendants' allegedly illegal practices was typical of the harm and threat of harm suffered by all members of the class, and where the same legal theory underlay the claims of the plaintiffs and the class members' corresponding claims); *see also Lowery*, 273 F.R.D. 668 at 684 (finding typicality satisfied where plaintiffs' claims have a "close nexus" with those of the proposed class and where there are questions of law or fact common to the class).

### iv.    The Settlement Class Representatives have fairly and adequately protected the interests of the Settlement Class.

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect

the interests of the class." Fed. R. Civ. P. 23(a)(4). The Tenth Circuit holds that adequacy of representation depends on resolution of two questions: "'(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'" *Rutter & Willbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187-88 (10th Cir. 2002) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)), *quoted in Lavigne*, 2018 WL 2694457, at *5.

The purpose of the adequacy of representation requirement is to "protect the legal rights of absent class members." *Lopez*, 206 F.R.D. at 289 (internal quotation marks & citation omitted); *see also Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 721 (11th Cir. 1987). "In order to adequately represent the class, two requirements must be met: (1) the class representative must not have interests antagonistic to those of the class, and (2) the attorneys representing the class must be qualified, experienced, and generally able to conduct the proposed litigation." *Lopez*, 206 F.R.D. at 289-9; *see also Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 598 (7th Cir. 1993); *Cross v. Nat'l Trust Life Ins. Co.*, 553 F.2d 1026, 1031 (6th Cir. 1977).

The first requirement, an absence of any conflicts between the class representatives and the class, is satisfied because both the Settlement Class Representatives and the Settlement Class members allege they have been harmed by the same allegedly unlawful practices. *See* Doc. 136 at 39-51. Because Plaintiffs and all Settlement Class members have allegedly suffered harm as a result of Defendants' policies and procedures, and acts and omissions, there are no antagonistic or conflicting interests that would prevent Plaintiffs from safeguarding the rights of absent Settlement Class members.

17

The second requirement is also met.  Counsel for the Plaintiffs are highly qualified and experienced in class action litigation, jail and prisons conditions litigation, and civil rights litigation, and have the resources to pursue this litigation on behalf of the Class.  *See* Doc. 231-6, Ex. PP, at 1-4; Doc. 231-6, Ex. QQ, at 1-4; Doc. 231-6, Ex. RR, at 1-3; Doc. 231-6, Ex. SS at 1-3.  Plaintiffs and their counsel have and will continue to prosecute this action vigorously.  Thus, the Rule 23(a)(4) adequacy requirement is met.  *See Lowery*, 273 F.R.D. at 684-85 (finding adequacy satisfied where the plaintiffs have common interests with the proposed class, plaintiffs' claims are typical of those of the proposed class, and plaintiffs have vigorously prosecuted the interests of the proposed class through their chosen counsel who are qualified, experienced and capable attorneys).

### 3.    The Proposed Settlement Class Satisfies the Rule 23(b)(3) Requirements.

Once the Court finds that the prerequisites of Rule 23(a) are satisfied, the Court must determine whether or not the action is maintainable as a class action under one or more provisions of Rule 23(b).  *See, e.g.*, *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976).  As the claims here satisfy the requirements of Rule 23(b)(3), the Court should certify the Settlement Class.

Class certification under Rule 23(b)(3) is appropriate when "questions of law or fact common to the members of the class predominate" and "a class action is superior to other available methods" of adjudicating the controversy.  Fed. R. Civ. P. 23(b)(3); *Wilfong*, 2001 WL 1795093, at *7-8.  Here, Plaintiffs' claims are properly certified under Rule 23(b)(3) for settlement purposes because Plaintiffs satisfy both the "predominance" and the "superiority" requirements.

To satisfy the predominance requirements, Plaintiffs must show that one or more common issues predominate over individual issues and that one trial of common issues is superior to conducting literally hundreds or thousands of separate trials. *See* Fed. R. Civ. P. 23(b)(3). The primary purpose of Rule 23(b)(3) is to promote efficiency and to take advantage of the economy that results from jointly adjudicating a large number of claims that share one or more common questions. *See* Fed. R. Civ. P. 23 advisory committee notes to 1966 amendment; *see also Sterling v. Velsicol Chemical Corp.*, 855 F.2d 1188, 1196 (6th Cir. 1988) (the goal of Rule 23(b)(3) is "to achieve the economies of time, effort, and expense").

The predominance prong "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *CGC Holding Co., LLC v. Broad and Cassel*, 773 F.3d 1076, 1087 (10th Cir. 2014) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 622-23, (1997)). "It is not necessary that all of the elements of the claim entail questions of fact and law that are common to the class, nor that the answers to those questions be dispositive." *Id.* "Put differently, the predominance prong 'asks whether the common, aggregation-enabling issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'" *Id.* (quoting 2 William B. Rubenstein et al., *Newberg on Class Actions* § 4:49, at 195-96 (5th ed. 2012)).

In *Tyson Foods, Inc. v. Bouaphakeo*, __ U.S. __, 136 S. Ct. 1036 (2016), the United States Supreme Court expressly noted that predominance under Rule 23(b)(3) can be established even where "important matters" such as actual injury, causation, and damages will have to be tried separately. *Id.* at 1045.

> When "one or more of the central issues in the action are common to the class and
> can be said to predominate, the action may be considered proper under Rule

> 23(b)(3) even though other important matters will have to be tried separately,
> such as damages or some affirmative defenses peculiar to some individual class
> members."

*Id.* (quoting 7AA C. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure* § 1778, at

123-24 (3d ed. 2005) (footnotes omitted)).  In *In re: Urethane Antitrust Litigation*, the Tenth

Circuit affirmed that class certification is appropriate even where there are individualized issues

as long as "the questions common to the class predominate over individualized questions."  768

F.3d at 1255 (citing *Amgen*, 568 U.S. at 468-69).  The Tenth Circuit also concluded that

predominance can be found even where "[i]t is true that some of the plaintiffs may have

successfully avoided damages."  *Id.* at 1254.

The predominance requirement addresses efficiency by making certain that class wide

issues outweigh individual issues.  *See Sterling*, 855 F.2d at 1197.  Here, the claims are based on

what Plaintiffs allege to be a single course of conduct: the shower renovation conducted by ICC

between February and July 2014 pursuant to the contract between ICC and the County.  Thus,

Plaintiffs and the members of the Settlement Class face a common set of factual and legal issues

and a common cause of injury that predominates over individual questions.  Resolution of these

issues will resolve the question of liability on a class-wide basis in one stroke.  Accordingly, the

predominance requirement has been met.

Since all Settlement Class Members have the right to opt out of the settlement, there is

nothing that prevents any plaintiff from continuing to prosecute his or her claim for monetary

relief individually.  *See, e.g.*, *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. at 347; Fed.

R. Civ. P. 23(b)(3)(A).  Further, the relief provided in the Settlement Agreement would not be

available in the absence of the class treatment.  *See In re Inter-Op Hip Prosthesis Liab. Litig.*,

204 F.R.D. at 347-48.

**C.     The Court Should Approve the Proposed Settlement Notices and Authorize Their Dissemination.**

"[I]n any proceeding [that] is to be accorded finality," due process requires that interested parties be provided with "notice reasonably calculated, under . . . the circumstances, to apprise [them] of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950).  The notice must be reasonably calculated to reach interested parties and where the names and address of the interested parties are known, due process requires mailed notices.  *Id*. at 318-19; *Dejulius v. Sprint Corp*., 429 F.3d 935 (10th Cir. 2005).

The contents of class notice must "'fairly apprise the . . . members of the class of the terms of the proposed settlement and of the options that are open to them in connection with [the] proceedings."'  *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1995) (quoting *Weinberger v. Kendrick*, 698 F.2d 61, 70 (2d Cir. 1982)).  Class notice is sufficient if it "may be understood by the average… class member."  *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1104 (5th Cir. 1997); *see also Churchill Village L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) ("Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." (internal quotation marks & citation omitted)).

Here, the proposed notices and their method of dissemination meet these requirements. The proposed notices clearly and concisely inform Settlement Class Members of all the relevant aspects of the litigation: (a) the Settlement Class definition and statement of claims; (b) the litigation history; (c) the terms of the Settlement Agreement; (d) the binding effect of any

judgment approving the Settlement on those who do not opt out; (e) the right to object to the

Settlement and the procedure for doing so; (g) whom to contact to obtain additional information

regarding the Settlement or the litigation; (h) the amount of compensation requested for the

Settlement Class Representatives to compensate them for their services to the Class; and (i) the

amount requested for reasonable attorneys' fees and costs.  Thus, the notices provide all the

information necessary for Settlement Class Members to make an informed decision with respect

to whether to remain in or opt out of the Settlement Class or whether to object to the proposed

Settlement.  Further, delivery by first class mail to the Settlement Class Members' last known

addresses is designed to reach the members in the most expeditious and economical way.  In

addition, summary notice of the Settlement will be published in local newspapers in order to

notify Settlement Class Members who are not notified of the Settlement through other means.

**D.    The Court Should Schedule a Fairness Hearing and Approve the Proposed Schedule for the Mailing of Settlement Notices, the Return of Opt-Outs, and the Filing of Objections.**

Plaintiffs propose the following sequence of events and deadlines, assuming the Court

grants this Motion for Preliminary Approval:

| Event | Date |
|---|---|
| Last day for Defendants to send the Settlement Class Notice to Settlement Class Members | Thirty days after Preliminary Approval Date |
| Last day for Settlement Class Counsel to file motion for award of attorneys' fees and costs | Thirty days after Preliminary Approval Date |
| Last day for Claim Forms to be postmarked by Settlement Class Members. | Ninety days after Preliminary Approval Date |
| Last day for requests for exclusion ("opt out requests") from the Settlement Class to be postmarked by Settlement Class Members | Ninety days after Preliminary Approval Date |

22

| Last day for Settlement Class Members to file objections to the settlement | Ninety days after Preliminary Approval Date |
|---|---|
| Last day for Settlement Class Counsel to file motion for final approval of settlement | 21 days before the final fairness hearing |
| Hearing on motion for final approval of settlement and application for attorneys' fees and costs | At least 150 days after the Preliminary Approval Date |

## III. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court issue its order, substantially in the form attached as Exhibit D to the Settlement Agreement:

1. Preliminarily approving the Settlement Agreement as being the product of serious, informed, non-collusive negotiations, having no obvious deficiencies, not improperly granting preferential treatment to Plaintiffs or segments of the Settlement Class, and falling within the range of possible approval;

2. Staying all proceedings in this action until the Court renders a final decision on approval of the Class Action Settlement;

3. Conditionally certifying the Settlement Class pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure for settlement purposes only;

4. Appointing Gabriel Armendariz, Eric Dion Coleman, Jacob Gomez, Tony Lovato, Matthew J. Lucero, Edward R. Manzanares, Christopher Mavis, Philip Talachy, Felipe J. Trujillo, Joseph Vigil, and James M. Wheeler as Settlement Class Representatives for settlement purposes only;

5. Appointing Plaintiffs' counsel as Class Counsel for settlement purposes only;

6. Determining that distribution of the Settlement Class Notice, including the notice itself, is reasonable and the best practicable notice under the circumstances, is reasonably calculated to apprise Settlement Class Members of their right to opt out or object to the proposed settlement, constitutes due, adequate, and sufficient notice to all persons entitled to receive notice, and meets the requirements of the Federal Rules of Civil Procedure and requirements of due process under the New Mexico and United States Constitutions; and

7. Setting the date and time for the final approval hearing.

Respectfully submitted,

Mark H. Donatelli
Paul Linnenburger
ROTHSTEIN DONATELLI LLP
1215 Paseo de Peralta
Post Office Box 8180
Santa Fe, New Mexico 87504-8180
(505) 988-8004

/s/ *John C. Bienvenu*
John C. Bienvenu
BIENVENU LAW OFFICE
P.O. Box 2455
215 Lincoln Avenue Suite 204A
Santa Fe, New Mexico 87504-8180
(505) 982-3813

/s/ *Kristina Martinez*
Kristina Martinez
EGOLF + FERLIC +
MARTINEZ + HARWOOD, LLC
123 W. San Francisco St., Second Floor
Santa Fe, NM 87501
(505) 986-9641

*Attorneys for Plaintiffs and the Class*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on the 28th day of June 2019, I filed this pleading

electronically through the CM/ECF system, which caused all parties or counsel of record to be

served by electronic means.

                                             */s/ Kristina Martinez*
                                             Kristina Martinez