## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

GABRIEL ARMENDARIZ,
ERIC DION COLEMAN, JACOB GOMEZ,
TONY LOVATO, MATTHEW J. LUCERO,
EDWARD R. MANZANARES,
CHRISTOPHER MAVIS, PHILIP TALACHY,
FELIPE J. TRUJILLO, JOSEPH VIGIL, and
JAMES M. WHEELER, on their own behalf and
on behalf of a class of similarly situated persons,

        Plaintiffs,

v.                                  Case No. 1:17-cv-00339-WJ-LF

SANTA FE COUNTY BOARD OF COMMISSIONERS,
and MARK GALLEGOS, in his individual and official capacity,
and INDUSTRIAL COMMERCIAL COATINGS, LLC,

        Defendants.

## PLAINTIFFS' UNOPPOSED MOTION FOR FINAL
## APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT

Plaintiffs Gabriel Armendariz, Eric Dion Coleman, Jacob Gomez, Tony Lovato, Matthew

J. Lucero, Edward R. Manzanares, Christopher Mavis, Philip Talachy, Felipe J. Trujillo, Joseph

Vigil, and James M. Wheeler ("Plaintiffs"), individually and on behalf of a settlement class

defined herein ("Settlement Class"), by and through their undersigned counsel, move the Court

to grant final approval of a Settlement Agreement and Release ("Settlement Agreement") that

has been negotiated and reached by Plaintiffs and Defendants Santa Fe County Board of

Commissioners and Mark Gallegos ("County") and Industrial Commercial Coatings, LLC

("ICC") (the County and ICC are hereinafter collectively referred to as "Defendants" and

Plaintiffs and Defendants are collectively referred to as "the Parties") as a proposed complete

resolution of this class action case ("Action") as between the Parties.

A copy of the Settlement Agreement was attached as Exhibit 1 to Plaintiffs' Unopposed

Motion for Preliminary Approval of Class Action Settlement Agreement.[1]  *See* Doc. 279-1.

Plaintiffs request that Court enter an order in the form attached to the Settlement Agreement as

Exhibit E, see Doc. 279-1 at 58-63, granting final approval of this class action settlement.

Specifically, Plaintiffs ask the Court to (a) certify the Settlement Class pursuant to Federal Rule

of Civil Procedure 23(b)(3); (b) appoint Gabriel Armendariz, Eric Dion Coleman, Jacob Gomez,

Tony Lovato, Matthew J. Lucero, Edward R. Manzanares, Christopher Mavis, Philip Talachy,

Felipe J. Trujillo, Joseph Vigil, and James M. Wheeler as Class Representatives of the

Settlement Class; (c) appoints Plaintiffs' counsel as Class Counsel for the Settlement Class; (d)

determines that the Notice Plan set forth in the Settlement Agreement and effectuated pursuant to

the Preliminary Approval Order constitutes the best notice practicable under the circumstances

and constitutes due and sufficient notice to the Settlement Class of the pendency of this case,

certification of the Settlement Class for settlement purposes only, the terms of the Settlement

Agreement, and the Final Approval Hearing, and satisfies the requirements of the Federal Rules

of Civil Procedure, the United States Constitution and any other applicable law; (e) approves the

Settlement Agreement as being the product of serious, informed, non-collusive negotiations,

having no obvious deficiencies, not improperly granting preferential treatment to Plaintiffs or

segments of the Settlement Class, and falling within the range of possible approval; (f) approves

the partial payment of attorneys' fees, costs, and expenses in the amount of $120,000.00; and (g)

approves the payment of service awards of $5,000.00 to each of the Class Representatives.

This motion will explain the circumstances and terms of the settlement, and the legal

---

[1] All capitalized terms in this motion shall have the meaning as defined in the Settlement
Agreement.

grounds supporting its preliminary approval.  Defendants do not oppose this motion and concur in the relief requested.

## I. FACTUAL BACKGROUND RELEVANT
## TO FINAL APPROVAL

**A.      History of this Litigation**

On March 12, 2016, certain Plaintiffs (Joe Martinez[2] and Christopher Mavis) filed a complaint against Defendants in the First Judicial District Court, County of Santa Fe, State of New Mexico, Case No. D-101-CV-2016-00671, on behalf of themselves and a putative class discussed below.  This case was dismissed without prejudice on October 4, 2017.  Certain Plaintiffs (Joe Martinez and Christopher Mavis) filed another complaint against Defendants in the First Judicial District Court, County of Santa Fe, State of New Mexico, Case No. D-101-CV-2018-01002, on behalf of themselves and a putative class discussed below.  This case remains pending, though no action has been taken to date and the case has not been served on Defendants.  Collectively, these two First Judicial District cases are referred to as the "State Actions."

On March 14, 2017, Plaintiffs filed a complaint against the County entitled *Armendariz et al. v. Santa Fe County Board of Commissioners et al*. in the United States District Court for the District of New Mexico, Case No. 1:17-cv-00339 (the "Federal Action"), on behalf of themselves and a putative class discussed below.  Plaintiffs amended the complaint for the first time on August 31, 2017.  Plaintiffs requested and were (in January 2018) ultimately granted permission to file a Second Amended Complaint.  In that Second Amended Complaint ("SAC"),

---

[2] Joe Martinez is a former named Plaintiff whose claims were dismissed with prejudice previously.

filed on August 2, 2018, the putative class consisted of "all persons who were inmates incarcerated at the Santa Fe County Adult Detention Facility ('ADF') during the renovation of its shower and lavatory areas in the Spring and Summer of 2014. Excluded from the class are employees, contractors, and/or other visitors to ADF during the relevant time period." The SAC asserted claims on behalf of the Plaintiffs and the putative class related to alleged injuries from exposure to various substances during the renovation of showers and lavatory areas at the ADF (the "Renovation Project"). The SAC sought recovery from the Commissioners of Santa Fe County, the then-Warden of the jail, and ICC, the contractor hired to do the renovations.

Since the initial complaint was filed, the Parties have engaged in extensive discovery and motions practice, including motions to dismiss portions of the complaint as well as motions to dismiss the claims of specific named Plaintiffs, motions to compel, motions for partial and complete summary judgment, and *Daubert* motions. Over two dozen depositions (expert and lay witnesses) have taken place.

On January 28, 2019, Plaintiffs filed their motion to certify a class. In March 2019, Defendants filed their oppositions to that motion as well as their summary judgment and *Daubert* motions.

**B.    Settlement Negotiations**

On April 1, 2019, after a number of months of informal settlement negotiations, the Parties engaged in a full-day mediation session with Retired United States Magistrate Judge William P. Lynch. The Parties did not reach an agreement for settlement at that session, but continued to negotiate with Judge Lynch as an intermediary. On May 3, 2019, the Parties reached an agreement to resolve the individual and class claims against all Defendants. The

Parties subsequently entered into the Settlement Agreement attached hereto, formalizing their agreement. *See* Exhibit 1.

Under the Settlement Agreement, the Parties have stipulated that this action should be certified as a class action under Federal Rule of Civil Procedure 23. Subject to approval of the Court, the Settlement Agreement provides that ICC will pay a total of $300,000 to settle all claims against all Defendants, including any claim for Settlement Class Counsel's attorneys' fees and expenses and class representative compensation. In addition, Defendants will bear all administrative expenses in issuing and making payments to Settlement Class Members including the costs of the settlement administrator. The settlement will constitute a full and complete adjudication of the claims, rights and obligations of the Parties and the Settlement Class with respect to the matters alleged in the complaint as between the Parties and as further set forth in the Settlement Agreement. The Parties believe that they have crafted a fair, reasonable, and adequate settlement of the claims at issue in this case, and one that warrants the Court's preliminary approval.

## C.     The Settlement Terms

The terms of the settlement are fully described in the Settlement Agreement, *see* Exhibit 1, and are summarized as follows.

### 1.     Certification of the Class

The Settlement Class is defined in the Settlement Agreement as people who were inmates at the ADF during the Class Period (February 17, 2014 through July 15, 2014). The Parties agree that the Action should be conditionally certified as a class action under Rule 23.

**2.    Monetary Relief**

Subject to approval of the Court, the Settlement Agreement provides that ICC will pay a total of $300,000 (the "Settlement Fund") to settle all claims against all Defendants, including any claim for Settlement Class Counsel's attorneys' fees and expenses and class representative compensation.  Plaintiffs seek Court approval to allocate the Settlement Fund as follows:

        A.    $125,000 to Settlement Class Members who timely file valid Claim Forms;

        B.    $55,000 to Settlement Class Representatives ($5,000 each) in recognition of their services to the Settlement Class; and

        C.    $120,000 to Settlement Class Counsel, for partial reimbursement of expenses advanced in this litigation and for any claim for attorneys' fees.

**3.    Settlement Administration Costs**

The Settlement Agreement provides that ICC will bear all administrative expenses in issuing and making payments to Settlement Class Members including the costs of the settlement administrator.

**4.    Release of Claims**

The Settlement Agreement provides that upon entry of the Final Approval Order and Judgment, the Settlement Class Representatives and members of the Settlement Class, and their respective heirs, assigns, successors, agents, executors, and representatives (the "Releasing Parties") shall be deemed to have, and by operation of the Settlement Agreement and the Final Approval Order and Judgment shall have fully, finally, irrevocably, and forever released Defendants and all of their past or present directors, officers, employees, agents, insurers,

shareholders, members, attorneys, experts and consultants; investigators; joint ventures;

contractors and subcontractors; suppliers; advisors, servants, commissioners, consultants,

representatives, partners, affiliates, related companies, divisions, related agencies, parents,

subsidiaries, predecessors, successors, and assigns (collectively, the "Defense Released Parties"),

as well as any and all other persons, firms, corporations, and governmental and/or non-

governmental entities of any kind, from any and all liabilities, claims, causes of action, damages

(whether actual, compensatory, statutory, punitive, or of any other type), penalties, costs,

attorneys' fees, losses, liens, debts, judgments, or demands, whether known or unknown, existing

or suspected or unsuspected, past, present, or future, that were or could have been asserted

against the County or ICC based on or related to the factual allegations contained in the

Complaint(s), First Amended Complaint(s), or Second Amended Complaint(s) filed in the State

Actions and Federal Action and that relate to or arise out of the renovation project (the "Released

Claims"), including unknown claims.

### 5.    Notice and Opt-Out Procedures

The Settlement Agreement provides for a detailed Settlement Class Notice to be sent by

mail to all Settlement Class Members informing them of their rights under the Settlement

Agreement, and for a summary Publication Notice to be published in three local newspapers

informing Settlement Class Members of the settlement and directing them to sources of

additional information.

The Settlement Agreement provides that Settlement Class Members have two options for

responding to the notices.  A Settlement Class Member may: (1) remain a Settlement Class

Member and be eligible to submit a Claim Form; or (2) request exclusion from the Settlement

Class and opt out.  Settlement Class Members who request exclusion from the Settlement Class and opt out will not be deemed to have released the Defendants from any claims and may pursue any claims they may have against the Defendants, but will not receive any payments from the Settlement Fund.  Settlement Class Members who submit Claim Forms will be eligible to receive payments from the Settlement Fund as determined under the Plan of Allocation.  Settlement Class Members who do not opt out may also present objections to the Court at the final fairness hearing.  Settlement Class Members who do not opt out and do not submit a Claim Form will be deemed to have released their claims, but will not receive any payments from the Settlement Fund.

### D.  Class Notice and Settlement Administration

On August 8, 2019, this Court granted the Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement Agreement.  In that order, the Court (a) preliminarily approved the Settlement Agreement as being the product of serious, informed, non-collusive negotiations, having no obvious deficiencies, not improperly granting preferential treatment to Plaintiffs or segments of the Settlement Class, and falling within the range of possible approval; (b) stayed all proceedings in this action until the Court renders a final decision on approval of the Class Action Settlement; (c) certified the Settlement Class pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure; (d) appointed Gabriel Armendariz, Eric Dion Coleman, Jacob Gomez, Tony Lovato, Matthew J. Lucero, Edward R. Manzanares, Christopher Mavis, Philip Talachy, Felipe J. Trujillo, Joseph Vigil, and James M. Wheeler as Settlement Class Representatives for settlement purposes only; (e) determined that distribution of the Settlement Class Notice, including the notice itself, is reasonable and the best practicable notice under the

circumstances, is reasonably calculated to apprise Settlement Class Members of their right to opt

out or object to the proposed settlement, constitutes due, adequate, and sufficient notice to all

persons entitled to receive notice, and meets the requirements of the Federal Rules of Civil

Procedure and requirements of due process under the New Mexico and United States

Constitutions; and (f) set a hearing for final approval of the settlement on January 14, 2020.

The Settlement Agreement preliminarily approved by the Court provided for a detailed

Notice Package to be sent to all Settlement Class Members informing them of their rights under

the Settlement Agreement, for a Summary Notice to be published in local newspapers, and for

advertisements to be placed on local radio stations.  Pursuant to the Court's order, Settlement

Services Inc. was retained as Claims Administrator to carry out the duties of mailing the Notice

Package and publishing the Summary Notice in the newspapers.  The County provided the

Claims Administrator with a database containing the names and last known addresses for all

Settlement Class Members.  After receipt of the database from the parties, the Claims

Administrator began the notice and claims administration process.

In accordance with the Settlement Agreement and the Court's August 8, 2019 order, the

Claims Administrator mailed the Court-approved Notice Package to all Settlement Class

Members. *See* Declaration of Mark Patton, filed herewith, ¶ 6.  The Claims Administrator also

caused to be published a summary notice as directed in the Court's order of preliminary

approval.  *Id*. ¶ 7.  Furthermore, the Claims Administrator created an interactive website to

provide information to and answer questions from Settlement Class Members, and further

provided a toll-free number to call with questions.  *Id*. ¶ 8.  To date, 457 individuals have

submitted Claim Forms; no individuals have filed Opt-Out Forms; and no individuals have

submitted an Objection.  *Id.* ¶ 9.

## II. THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT.

**A.**     **<u>Adequate Notice Has Been Provided to the Settlement Class and the Terms of the Settlement are Fair, Reasonable and Adequate.</u>**

Settlement of a class action requires the Court's approval.  Fed. R. Civ. P. 23(e) ("A class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such a manner as the court directs.").  The law generally favors the settlement of complex class actions.  *Entr. Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 242 n.1 (S.D. Ohio 1991); *see also* 4A Conte & Newberg, *Newberg on Class Actions*, §11.41 (4th ed. 2002).  The Court should approve a class action settlement if the settlement is "fair, reasonable and adequate."  Fed. R. Civ. P. 23(e)(1)(C); *In re Sprint Corp. ERISA Litig.*, 443 F. Supp. 2d 1249, 1256 (D. Kan. 2006); *see also Bailey v. Great Lakes Canning, Inc.*, 908 F.2d 38, 42 (6th Cir. 1990); *Jones v. Nuclear Pharm., Inc.*, 741 F.2d 322, 324 (10th Cir. 1984); *In re Rio Hair Naturalizer Prods. Liab. Litig.*, No. MDL 1055, 1996 WL 780512, at *11 (E.D. Mich. Dec. 20, 1996) (citing *Manual for Complex Litigation*, § 30.42 (3d ed. 1995)). The Court's main concern in evaluating a class action settlement is to ensure that the rights of passive class members are not jeopardized by the proposed settlement.  *In re Sprint Corp. ERISA Litig.*, 443 F. Supp. 2d at 1255 (citing *Amchem Prods., Inc. v. Winsor*, 521 U.S. 591, 623 (1997)).

There are three steps on the road to final approval of a class action settlement: first, the Court must preliminarily approve the proposed settlement; second, members of the class must be given proper notice of the proposed settlement; and third, after holding a hearing, the Court must give its final approval to the settlement.  *Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir.

1983); *Enter. Energy Corp.*, 137 F.R.D. at 245; *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 369 (S.D. Ohio 1990). The Court granted preliminary approval of the settlement in its August 8, 2019 order. Thus, the Court must at this point determine whether the Parties provided proper notice of the settlement to the Class and whether the terms of the settlement are fair, reasonable and adequate.

### 1.    *Proper Notice Has Been Provided to the Class.*

"[I]n any proceeding [that] is to be accorded finality," due process requires that interested parties be provided with "notice reasonably calculated, under…the circumstances, to apprise [them] of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). The notice must be reasonably calculated to reach interested parties and where the names and addresses of the interested parties are known, due process requires mailed notices. *Id.* at 318-19; *Dejulius v. New England Health Care Emp. Pension Fund*, 429 F.3d 935 (10th Cir. 2005) The contents of the class notice must "'fairly apprise the . . . members of the class of the terms of the proposed settlement and of the options that are open to them in connection with [the] proceedings.'" *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1995) (quoting *Weinberger v. Kendrick*, 698 F.2d 61, 70 (2d Cir. 1982)). Class notice is sufficient if it "may be understood by the average… class member." *Hitt v. Nissan Motor Co. Ltd. (In re Nissan Motor Corp. Antitrust Litig.)*, 552 F.2d 1088, 1104 (5th Cir. 1997); *see also Churchill Village L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) ("Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.") (internal quotation marks & citation omitted)).

11

Here, the Notice Package and its method of dissemination meet these requirements. The Notice Package clearly and concisely informed Class members of all the relevant aspects of the litigation: (1) the Class definition and statement of claims; (2) the litigation history; (3) the terms of the Settlement Agreement; (4) how the settlement proceeds will be allocated; (5) the amount of compensation requested for the Class Representatives to compensate them for their services to the Class; (6) the amount of attorneys' fees and costs which may be awarded to Class Counsel; (7) the binding effect of any judgment approving the settlement on those who do not opt out; (8) the right to object to the Settlement and the procedure for doing so; and (9) whom to contact to obtain additional information regarding the Settlement or the litigation. The Notice Package provided all the information necessary for Class members to make an informed decision with respect to whether to remain in or opt out of the Class or whether to object to the proposed settlement.

The method of providing notice to potential Class members also complies with the requirements of due process. The Claims Administrator mailed the Court-approved Notice Package to all class members. *See* Mark Patton Declaration, ¶ 6. The Claims Administrator also caused the Legal Notice to be published in several newspapers, some with local and some with statewide circulation, and placed announcements in local radio stations. *Id.* ¶ 7. The Claims Administrator further created an interactive website to provide information to and answer questions of potential Class Members, and provided a toll-free number to call with questions. *Id.* ¶ 8.

In summary, the Court should hold that the notice requirements of Rule 23 and the due process clause have been met in the present case.

### 2.     *The Settlement is Fair, Reasonable and Adequate.*

The Tenth Circuit has established four non-exclusive factors which this Court must consider in evaluating whether the Parties' settlement in this case is fair, reasonable and adequate:  (a) whether the proposed settlement was fairly and honestly negotiated; (b) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (c) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (d) the judgment of the parties that the settlement is fair and reasonable.  *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002) (internal quotation marks & citation omitted); *In re Sprint Corp. ERISA Litig.*, 443 F. Supp. 2d at 1256.[3]

In considering whether to grant final approval, the Court cannot modify the proposed settlement, but must approve or disapprove the proposed settlement "as a whole" in relation to all of those concerned.  *See Evans v. Jeff D.*, 475 U.S. 717, 727 (1986); *Walsh v. Great At. & Pac. Tea Co., Inc.*, 726 F.2d 956, 965 (3d Cir. 1983); *In re Rio Hair Naturalizer Prods. Liab. Litig.*, 1996 WL 780516 *11 ("The touchstone for final approval is the effect on the class as a whole in light of the particular circumstances." (emphasis omitted)).  The Court examines the settlement "in its entirety and not as isolated components."  *Enter. Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D at 246.  Also, the Court is not "to determine the merits of the

---

[3] Courts in other circuits utilize similar factors, such as (1) the Plaintiffs' likelihood of ultimate success on the merits balanced against the amount and form of relief offered in settlement; (2) the complexity, expense and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the judgment of experienced trial counsel; (5) the nature of the negotiations; (6) the objections raised by the class members; and (7) the public interest. *See Enter. Energy Corp.*, 137 F.R.D. at 245; *In re Dun & Bradstreet Credit Litig.*, 130 F.R.D. 366, 371 (*citing Williams*, 720 F.2d at 922); *Thompson v. Midwest Found. Indep. Physicians Ass'n*, 124 F.R.D. 154, 157 (S.D. Ohio 1988).

controversy or the factual underpinning of the legal authorities advanced by the parties."

*Williams v. Vukovich*, 720 F.2d 909, 921; *see also Armstrong v. Bd. of Sh. Dirs.*, 616 F.2d 305,

314-15 (7th Cir. 1980), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir.

1998).  To do so would defeat the purposes of the settlement, which include avoiding a

determination of sharply contested issues and dispensing with expensive and wasteful litigation.

*Levin v. Miss. River Corp.*, 59 F.R.D. 353 (S.D.N.Y. 1973), *aff'd mem.*, 486 F.2d 1398 (2d Cir.

1973).

Examination of the Tenth Circuit's factors confirms that the settlement in the present case

is fair, reasonable and adequate.

### a.    The Proposed Settlement Was Fairly and Honestly Negotiated.

The first factor the Court must consider is whether the proposed settlement was fairly and

honestly negotiated.  *Rutter & Wilbanks Corp.*, 314 F.3d at 1188; *In re Sprint Corp. ERISA

Litig.,* 443 F. Supp. 2d at 1256.  In evaluating the propriety of a proposed settlement, courts have

frequently focused on the negotiating process by which the settlement was reached to determine

whether that process was genuinely adversarial.  *See, e.g.*, *Weinberger v. Kendrick*, 698 F.2d 61,

74 (2d Cir. 1982).

In the present case, settlement negotiations were only undertaken after the Parties

engaged in extensive discovery and voluntary disclosure of all relevant background information.

The Parties exchanged all relevant documents including jail records, medical records, expert

reports and supporting documents, interrogatories, photos, diagrams, statistical compilations, etc.

The Parties had sufficiently developed the facts in the action to fully analyze the pro and cons of

settlement.  *See Levell v. Monsanto Research Corp.*, 191 F.R.D. 543, 550 (S.D. Ohio 2000);

*Collier v. Montgomery County Hous. Auth.*, 192 F.R.D. 176, 184 (E.D. Pa. 2000); *Bryant v. Universal Servs.*, No. CIV. A. 99-2944, 2000 WL 680258 at 3 (E.D. La. May 24, 2000); *In re Holocaust Victim Assets Litig.*, 105 F. Supp. 2d 139, 146 (E.D.N.Y. 2000).

The settlement is the product of serious, informed, non-collusive negotiations. The settlement negotiations occurred only after extensive discovery and litigation, lasted many months, and were adversarial in nature. The Parties engaged in mediation with the assistance of a highly experienced mediator and jurist, retired United States Magistrate Judge William P. Lynch, in spring 2019, and then continued negotiations through a number of additional sessions amongst counsel through summer 2019. Clearly, the settlement negotiations were adversarial in nature. *See In re Sprint Corp. ERISA Litig.,* 443 F. Supp. 2d at 1260 (finding that settlement negotiations, although conducted at an early stage of litigation, were fair and honest, thus supporting final approval). The first factor weighs in favor of final approval.

**b.    Serious Questions of Law and Fact Place the Ultimate Outcome in Doubt.**

The second factor the Court must consider is whether serious questions of law and fact place the ultimate outcome of this case in doubt. *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002); *In re Sprint Corp. ERISA Litig.,* 443 F. Supp. 2d 1249, 1260-61 (D. Kan. 2006). While Plaintiffs firmly believe they have meritorious claims on the merits, Plaintiffs also acknowledge that all complex cases such as this one confront numerous hurdles on their way to a successful outcome in the case. First and foremost, Plaintiffs always face a significant burden in obtaining class certification. Second, if class certification is denied or limited, Plaintiffs would be faced with prosecuting scores of individual cases. The time and resources required to prosecute more than a handful of individual cases would be immense. On

the other hand, if class certification is obtained, there still remains the difficult burden of proving

class-wide liability, and the possibility that individual damage cases must still be brought.

Again, such serious questions of law and fact would have placed the ultimate outcome of the

action in doubt.  *See In re Sprint Corp. ERISA Litig.*, 443 F. Supp. 2d at 1260-61 (finding that

serious questions of law and fact regarding plaintiffs' claims placed the ultimate outcome in

doubt and weighed in favor of final approval).  This factor also weighs in favor of final approval.

> **c.      The Value of Immediate Recovery Outweighs the Mere Possibility of  Future Relief After Protracted and Expensive Litigation.**

The third factor to be considered by the Court is the value of immediate recovery under

the proposed settlement versus the mere possibility of future relief after protracted and expensive

litigation.  *Rutter & Wilbanks Corp.*, 314 F.3d at 1188; *In re Sprint Corp. ERISA Litig.*, 443 F.

Supp. 2d at 1261.  There can be no doubt whatsoever that if the Parties had not reached an

agreement to settle the action, litigation in this case would have been exceedingly difficult,

expensive, and lengthy.   After the Court ruled on the difficult class certification issues, the

Parties would have proceeded to additional discovery on the merits.  Due to the complexity of

the issues, the large amount of money at stake, and the number of attorneys and experts involved

in these cases, tremendous resources would have been expended trying these cases, either

collectively or individually.  And as noted above, the ultimate outcome of this case was uncertain

due to disputed questions of law and fact.

By settling this case and providing funds for the benefit of the Settlement Class

Members, all Parties have averted many of the risks of proceeding with litigation.  Each

Settlement Class Member who filed a valid claim is entitled to receive compensation.  Thus, the

settlement provides a meaningful financial benefit to Settlement Class Members.

Of course, resolution of the action provides a benefit to the Defendants as well. It removes the risk of a significant jury award against the Defendants, and operates to reduce the continued accrual of attorneys' fees and costs on all sides. Resolution of the action will save the Parties and the Court a tremendous amount of time and money, while providing meaningful benefit to the Settlement Class. This factor also weighs in favor of final approval. *In re Sprint Corp. ERISA Litig.*, 443 F. Supp. 2d at 1261 (uncertainty of result and certainty of additional expense to litigate claims weighs heavily in favor of approval); s*ee also Levell*, 191 F.R.D. at 550; *Collier*, 192 F.R.D. at 184; *Bryant*, 2000 WL 680258, at *3; *In re Holocaust Victim Assets Litig.*, 105 F. Supp.2d at 146.

### d. The Parties and Their Counsel Believe the Settlement Is Fair and Reasonable.

The fourth factor the Court must consider is whether the Parties and their counsel believe the settlement is fair and reasonable. *Rutter & Wilbanks Corp.*, 314 F.3d at 1188; *In re Sprint Corp. ERISA Litig.*, 443 F. Supp. 2d at 1261-62. All of the Parties' attorneys are experienced trial attorneys. It is the collective judgment of counsel for the Parties that settlement of the action in accordance with the terms set forth in the Settlement Agreement is fair, reasonable and preferable to continued litigation. The Court "should keep in mind the unique ability of class and defense counsel to assess potential risks and rewards of litigation [and] a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *See Cotton v. Hinton*, 559 F.2d. 1326, 1330 (5th Cir. 1977). Some courts even hold that the Court should "defer to the judgment of experienced counsel who has competently evaluated the strength of his

proofs." *Levell*, 191 F.R.D. at 557; *see also Williams*, 720 F.2d at 922 (6th Cir. 1983). This factor also weighs in favor of final approval. *See In re Sprint Corp. ERISA Litig.*, 443 F. Supp. 2d at 1261 (opinion of the parties' counsel supports final approval of class action settlement).

For all these reasons, the Court should hold that the Parties provided proper notice of the settlement to the Settlement Class and that the terms of the Parties' Settlement Agreement are fair, reasonable and adequate.

B.    <u>Plaintiffs' Request for Attorneys' Fees, Costs and Incentive Payments Is Fair and Reasonable and Should be Approved.</u>

Plaintiffs seek $120,000 as partial reimbursement for their litigation expenses, subject to approval of the Court. In addition, Plaintiffs seek awards to the Class Representatives as compensation for their contribution to the investigation and prosecution of this case, in the amount of $5,000 each.

As fully set forth in Plaintiffs' Unopposed Motion for Award of Attorneys' Fees, Costs and Incentive Awards, filed separately, *see* Doc. 281, these payments are fair, reasonable, supported by law, and should be approved.

C.    <u>The Absence of Any Objections Supports Final Approval.</u>

Settlement Class Members were fully informed of all aspects of the proposed settlement, including the amount of the settlement fund, the allocation formula, the amount to be requested for attorneys' fees and costs, and the amount to be requested for incentive payments to the Class Representatives. Settlement Class Members were provided with an opportunity to object to the terms of the settlement. Not one objection was received from any Settlement Class Member. Mark Patton Declaration, ¶ 9.

The fact that no class member has objected to the settlement is a strong indication of a

settlement's fairness.  *Newberg*, §11.48.  In the present case, it is revealing that, despite the issuance of the Notice Package to all Settlement Class Members, none filed objections to the settlement.  By contrast, more than 400 individuals have submitted Claim Forms without objection.  No individuals have chosen to opt out of the settlement.  *See Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 188-19 (3d Cir. 1990) (objections of 29 class members out of a settlement class of 281 (over ten percent) "strongly favors settlement); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 624 (N.D. Cal. 1979) (objections from 16% of class was "persuasive" that settlement was adequate).  Plaintiffs submit that, given the absence of any objections in the present case, the Court should grant final approval of the settlement.

### III. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court issue its order, substantially in the form attached as Exhibit E to the Settlement Agreement.  In addition, Class Representatives and Class Counsel respectfully request that the Court approve payment to Class Counsel in the amount of $120,000.00 and payment to each Class Representative in the amount of $5,000.00.

Respectfully submitted,

Mark H. Donatelli
Paul Linnenburger
ROTHSTEIN DONATELLI LLP
1215 Paseo de Peralta
Post Office Box 8180
Santa Fe, New Mexico 87504-8180
(505) 988-8004

/s/ *John C. Bienvenu*
John C. Bienvenu
BIENVENU LAW OFFICE
P.O. Box 2455
215 Lincoln Avenue Suite 204A
Santa Fe, New Mexico 87504-8180
(505) 982-3813

/s/ *Kristina Martinez*
Kristina Martinez
EGOLF + FERLIC +
MARTINEZ + HARWOOD, LLC
123 W. San Francisco St., Second Floor
Santa Fe, NM 87501
(505) 986-9641

*Attorneys for Plaintiffs and the Class*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 23rd day of December 2019, I filed this pleading electronically through the CM/ECF system, which caused all parties or counsel of record to be served by electronic means.

/s/ *Kristina Martinez*
Kristina Martinez